ACCEPTED
06-16-00015-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
9/8/2016 10:57:21 PM
DEBBIE AUTREY
CLERK

IN THE SIXTH COURT OF

APPEALS TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
9/9/2016 8:52:00 AM
DEBBIE AUTREY
Clerk

GREAT NORTHERN ENERGY, INCORPORATED

APPELLANT

No. 06-16-00015-CV

v.

CIRCLE RIDGE PRODUCTION, INC.

APPELLEE

**APPLELLANT GREAT NORTHERN**

**ENERGY, INC.**

**ORAL ARGUMENTS REQUESTED**

**APPELLANT'S BRIEF**

WILLIA M J. GARDNER
Texas Bar No. 07661000
422 N. Green St., P.O. Box 1 746
Longview, Texas 75606-1 746
Tel. 903-236-7900
Fax 903-236-3367
wjg@wjg-law.com

ATTORNEY FOR APPELLANT
GREAT NORTHERN ENERGY, INC.

# TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL ........................................ pg 3-6

INDEX OF AUTHORITIES .............................................pg 6-10

STATEMENT OF THE CASE .......................................pg 11-15

REQUEST FOR ORAL ARGUMENT ......................................... pg 16

ISSUES PRESENTED ..................................................... pg 17-28

STATEMENT OF FACTS ..............................................pg 29-33

SUMMARY OF THE ARGUMENT ...............................................pg 34-36.

ARGUMENT & AUTHORITIES.........................................pg 37-88

I, Standards of Review...............................................................pg 37

II. September 11, 2012 Note and Deed of Trust...................................pg 37-41

III. Improper *Voir Dire*...............................................................pg 41-43

IV. Exclusion of Practically All of Appellants Evidence......................pg 43-58

V. Error in Either Granting Instructed Verdicts Against GNE
    and/or Refusing to Submit Issues to Jury for Decision ..................pg 58-67

VI. Error in Refusig to Grant Great Northern's Motion for
    Mistrial ...............................................................................pg 67-68

VII. Errors Related to Jury Submission & Argument ...................... pg 68-74

VIII. Cumulative Error......................................................... pg 74-76

IX. Error in Awarding Attorneys'' Fees to Circle Ridges'
    Attorneys...................................................................,pg 76-82

X. Error in Overruling Great Northern's Motion for Judgment..........

NOV that Circle Ridge taken nothing with regard to
any liability of Great Northern on the $700K note........................ pg 82-83

XI. Error Overruling Great Northen's Motion for Judgment
NOV on Circle Ridge's Trespass to Try Title Claims..................pg 83-88

PRAYER ...............................................................................pg 89-90.

CERTIFICATE OF SERVICE ...........................................................pg 91-92.

CERTIFICATE OF COMPLIANCE..........................................................pg 93.

APPENDIX .......................................................................pg 94-95.

IN THE SIXTH COURT OF

APPEALS TEXARKANA, TEXAS

GREAT NORTHERN ENERGY, INCORPORATED

APPELLANT
No. 06-16-00015-CV

v.

CIRCLE RIDGE PRODUCTION, INC.

APPELLEE

_____

DOCKETING STATEMENT

IDENTITY OF PARTIES &

COUNSEL

_____

The following is a complete list of the parties, the attorneys, and any other person who has an interest in the outcome of this lawsuit:

CIRCLE RIDGE PRODUCTION, INC., Plaintiff, by serving its attorney: Dean Searle
Ronan Searle
SEARLE & SEARLE PC
305 W. Rusk Street, Suite 101
Marshall, Texas 75670
Tel. #:903-935-9772
Fax # 903-935-9790

Michael T. Runyan
305 W. Rusk Street
Marshall, Texas
75670
Tel.#:903-935-7700
Fax #:903-935-9790

KEVIN STEPHENS, Third Party Defendant, Pro se:
Kevin Stephens
Hallsville, Texas
kstephens@signal
wellservice.com

Great Northern Energy, Incorporated, by serving its attorney:

William J. Gardner
William J. Gardner, PC PO
 Box 1746
422 B N Green Street
Longview, Texas 75606-1746
Tel. No. 903-236-7900
Fax No. 903-236-3367

# TABLE OF *AUTHORIITES*

## *CASES*

*A. J. Miller Trucking v. Wood,* 474 S.W. 2d 763 (Tex. App. Tyler 1971, *writ ref'd n.r.e.)*………………………………………………………..pg. 43

*Allen v. Reidel,* 425 S.W.2d, 665 (Tex.Civ.App.-Eastland, 1969, no writ)pg 74

*Anderson Bartlett & East's Texas Uniform Commercial Code Annotated (2007 Addition-West Publishing)*………………………………… *pg 39*

*Anderson v Gilbert,* 897 S.W.2d 783, 784-785, (Tex. 1995)………………*pg* 47

*Amoco Production v. First Baptist Church*, 611 S.W. 2d , 610(Tex. 80)..pg.67

*Archer v. Griffin*, 390 S.W. 2d, 735, 740, (Tex. App. 1964)………………pg.

*Bank One v. Stewart*, 967 S.W. 2d, 419, 434, (Tex. App.-Houston [14th Dist.] 1998, pet. denied.)…………………………………………………………pg.66

*Campbell v. Mortgage Electric Registrations System Inc.,* 2012 Tex. App. Pg.41

*Case Corp. v. High Class Business Systems*, 184 S.W. 3d 760, 770(Tex.App.-Dallas 2005 pet. denied.)………………………………………………pg 67.

*Chapman v. Moser,* 532 F2d, 1358 (5th Cir. 1976)……………………………pg71

*Cire v. Cummings,* 134 S.W. 3d, 835, 838-39(Tex. 2004……………………pg

*Cortez v. HCCI-SAN ANTONIO INC*. 159 S.W. 3d, 87 (Tex. 2005)……….pg.42

*Crill v. Houston Ind*., 124 S.W. 3d, 742m 753(Tex.App.-Houston [1st Dist.], 2003 no pet.)……………………………………………………………….pg.64

*D.T. Carroll Corp. v Carroll, 256 S.W. 2d 429, 432 (Civ. App.—San Antonio 1953 ref. n.r.e.)*…………………………………………………………………*pg85*

*Dames v Strong, 659 S.W.2d 127, 129 (Tex. App.—Houston[14th Dist.] 1983, no writ)*…………………………………………………………………*pg 85*

*Daves v. Lawyers Surety Corp.* 459 S.W. 2d, 655, 657(Tex. Civ. App.-Amarillo 1970 writ ref'd n.r.e.)…………………………………………………… pg.

*Dewitt County Elec. Coop v. Parks,* 1 S.W. 3d, 96105, (Tex 1999)………pg 65

*Dillon v. Hodges,* 804 F2d, 1384, (5th Cir. 1984)………………… ... pg 71

*Doria v Suchowolski, 531, S.W. 2d 360, 362 (Civ. App.—San Antonio 1975 ref. n.r.e.)*………………………………………………………… pg 85

*El Applel, LTD, v. Olivas*, 370 S.W.3d, 757 Texas (2012)…………… Pg 77

*Estate of Boren,* 268 S.W. 3d 841,846(Tex.App.-Texarkana, 2008, pet denied…………………………………………………………….....pg.70

*Everbank v. Seedergy Ventures, Inc.,* 2016, Tex.App. LEXIS 7319 (Tex.App.-Houston [14th Dist.] 2016, authority cite)………………………………….pg 38

E*xxon Mobil Corp. v. Kinder Morgan Operating, LP,* 192 S.W. 3d, 120,126-127(Tex.App.-Houston [14th Dist.] 2006, no pet.)……………………………pg.65

*Exxon Corp. v. Gill*, 221 S.W.3d, 841, 848(Tex.App.-Corpus Christi 2007) reversed on other grounds…... ……………………………………………..…pg.65

*Farah v. Mafrige & Cornmanik*, PC, 927 S.W.2d, 663, 675(Tex.App.-Houston[1st Dist.] 1996 no writ……………………………………………pg.66
*Federal Financial Co. v. Delgado,* 1 S.W. 3d 181, 185………………pg.40

*Foley v. Daniel*, 346, S.W.3d 687,690(Tex. App. –El Paso 2009, no pet.)………………………………………………………………pg. 63

*Foremost Plastics Corp, USA v. Presidio Engineering Contractors, Inc*., 960 S.W. 2d, 41, 45(Tex. 1998)……………………………………………… .pg.65

*Fritsche v Niechoy, 197 S.W. 1017, 1018-1019 (Civ. App.—Galveston 1917, dis..*………………………………………………………………..pg.85

*Gray v Joyce, 485 S.W. 2d 311, 313 (Civ. App. –Tyler 1972, ref. n.r.e.)……pg 86*

*Hart v. Easton,* 321 S.W.2d 574,159,Tex 375, (Texas 1959)………………pg 72

*Heil v Wirth, 161 Tex. 609, 343 S.W. 2d 226, 226-230 (1961)*…………………pg 85

*Hicks v Southwestern Settlement & Devlop. Corp.*, 188 S.W. 2d 915, 929 *(Tex. App. –Beaumont 1945, ref, w.o.m.)*……………………………………………*pg 85*

*Jamail v. Anchor Mort. Services, Inc.*, 809 S.W. 2d 221, 223(Tex.1991)……pg. 56

*Johnson v. Cox,* 630 S.W. 2d 492 (Tex. App.-Corpus Christi, 1982, *writ ref'd n.r.e.)*………………………………………………          ……………...pg.39

*Landon v. Jean Paul Budinger, Inc.,* 724 S.W. 2d, 931,939 (Tex.App.-Austin 1987, no writ)…………………………………………………………………pg.

*Lawson v. Finance America Private Brands*, 537 S.W.2d 483, 485(Tex. Civ. App.-El Paso, 1976, no writ)………………………………………………..pg.62

*Leavings v. Mills,* 175 S.W. 3d 301, 310 (Tex. App-Houston[1st Dist.] 2004, no Pet.)…………………………………………………………………..pg. 41

Lexis 4030, 2012 Westlaw 1839357*4 (Tex. App.-Austin May 18, 2012, Pet. denied)……………………………………………………………..pg

*McCraw v. Maris,* 828, S.W. 2d, 756, 758(Tex.1992)………………………pg 57

*Mancorp, Inc. v. Culpepper*, 802 S.W. 2d, 226, 230 (Tex. 1990)…………..pg 56

*Mangess v. Guerra*, 673 S.W. 180, 183 (Tex. 1984)……………………pg.67-68

*Mapco Inc. v. Holt*, 476, S.W.2d , 70 (Tex.Civ. App.-Amarillo, 1971, writ ref'd n.r.e…………………………………………………………………………..pg

*Marquis Acquisitions, Inc, v Steadfast  Ins.*, 409 S.W. 3d, 808, 813-14(Tex. App.-Dallas 2013, no  pet.)(elements 1, 3-5)………………………………………pg.63

*Marshall v Garcia, 514 S.W.2d 513, 518-519 (Civ. App.—Corpus Christi 1974, ref. n.r.e.)*………………………………………………………………*pg 84*

*Modine Mfg.Co. the North E. Ind. School District,* 503 S.W. 2d, 833(Tex.Civ.App-Beaumont 1973, writ ref'd n.r.e.)………………..……...…pg.57

*Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2, 508, 510 (Tex.1947)pg 66

*Ojeda v. Walmart Stores*, 956 S.W. 2d 704, 706-707 (Tex. App.-San Antonio 1997, pet. denied)……………………………………………………….pg.58

*Page Airways, Inc., v. the Associated Radio Service Co.*, 545 184, 189-190(Tex.Civ. App.-San Antonio, 1976, writ ref'd n.r.e.)……………………pg. 61

*Peco Contruction Co. v.Quahardo*, 919 S.W.2d, 736, 738 n.3.Tex. App. –San Antonio 1996, writ denied)……………………………………………... pg 65

*Perry v. Breland*, 16 S. W. 3d, 182, 187, (Tex. App. –Eastland, 2002 pet. denied)(element 2)……………………………………………….....pg. 63

*Ragsdale v. Griffin,* 380 S.W.2d, 164 (Tex.Civ.App. 1964…………………pg 71

*Reinhardt v North 507 S.W. 2d 589,591, (Civ. App.–Waco 1974, ref. n.r.e)*pg 86

*Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W. 2d , 493,494-95)Tex. 1991)……………………………………………………………………….pg.65

*Standard Oil Co. of Tex. V Marshall, 265 F.2d 46,50 (5ᵗʰ Cir. 1959) cert denied 361 U.S. 915, 80 S. Ct. 259, 4 L.Ed.2d 185………………………………….pg 84*

*Standolind Oil & Gas Co. v State, 136 Tex. 5, 133 S.W. 2d 767, 770 (1939) pg 84*

*Stewart Title Guaranty, Co. v. Sterling, 822 S.W.2d, 1 (Texas 2006)……...pg 82*
..
*Southern Pacific Co., v. Hubbard*, 297 S.W.2d, 120, 156, Tex. 525, (Tex. 1956)……………………………………………………………………….pg 75

*T.F.W. Management v. Westwood Shores Property Owners Assoc.*, 79 S.W. 3d 712, 719(Tex.App.-Houston[14ᵗʰ Dist.] 2002 pet. denied)………………….pg. 66

*Texas Co. v Lee,* 157 S.W. 2d, 628, 183 Tex. 167 (Texas 1942)……………pg 70

*Tony Gullo Motors, v. Chapa,* 212 S.W.3d, 299 (Texas 2006)……………. Pg 79

*Traveler's Ins. Co., v. Deleon*, 456 S.W. 2d 544, 545,(Tex. Civ. App.-Amarillo 1970, *writ ref'd n.r.e.)*……………………………………………….pg.43

*Walker v. Packer,* 827 S.W. 2d 833, 839 (Tex.1992(, Orig Proceeding).pg.

*Zuniga v. Wooster Ladder Co*., 119 S.W.3d, 856, 862(Tex. App.- San Antonio 2003, no pet.) (element 2)……………………………………………….pg. 63

## STATUTES

26 USCS §7425(b)(1),(c)(1)……………………............................... pg 86

Tex. Bus. & Com. Code Ann Section §3.3110 (West 2015)………………..pg 38

Tex. Bus. & Com. Code Ann. §3.3110 (d) (West 2015)……………………pg.38

Tex. Bus & Com. Code Ann. §3.201. (West 2015)…………………………pg.39

Tex. Bus. & Com. Code Ann §3.201(a)………………………………...pg 62

Tex. Bus & Com. Code Ann. §3.201(c) Comment C………………………..pg

Tex. Bus. & Com. Code Ann §3.203(2013)…………………………………pg 40

Tex. Bus. & Com. Code Ann §3.203(b) (West 2015)………………………..pg

Tex. Bus. & Com. Code Subsection §3.203(d)……………………… pg.39,60

Tex. Bus. & Com. Code Ann Section §3.201, (LEXIS NEXIS 2016)……….pg.44

Tx. Prop. Code, 22.001-22.022…………………………………………pg 84

Tex Rules of Evidence 701-706…………………………………………pg 42

## RULES

Texas Rules of Civil Procedure. 783-809………………………………… pg 84

## TREATISES

*Anderson Bartlett & East's Texas Uniform Commercial Code Annotated*
*(2007 Addition-West Publishing)…………………………………… Pg.39*

# STATEMENT OF THE CASE

The Parties to this Appeal, and their respective designations are as follows, to wit:

1.      Great Northern Energy, Inc.: Appellant, Defendant and Counter-Plaintiff in the trial court (hereinafter sometimes either "Appellant" or "Great Northern") or: ("GNE").

2.      Circle Ridge Production, Inc.: Appellee herein, Plaintiff and Counter Defendant in the trial court action (hereinafter sometimes either "Appellee" or "Circle Ridge" or "C.R.P.").

3.      Kevin Stephens: Appellee herein, and Third Party Defendant in the court below (hereinafter "Appellee Stephens" or "Stephens": or "K.S.").

Collectively, hereinafter Circle Ridge and Stephens are referred to as "Appellee's". "Other parties to the court below, who are not parties to this appeal are as follows:

1.      Joseph B. Loftis, Defendant below (hereinafter sometimes either "Loftis" or "Joe Loftis").

2.      Ronald J. Abercrombie, Defendant in the trial court (hereinafter sometimes either "Abercrombie" or "R.J.A.").

Further, for reference, the reporter's record of the proceedings is hereinafter referred to as "R.R." and the clerk's record or transcript is "C.R.".

This central beginning point of this case is a sale occurring on September 11, 2012 in which Great Northern Energy, Inc., ("Appellant") purchased oil gas and mineral and lease hold interest from two parties, Circle Ridge Production, Inc., and Kevin Stephens, ("Appellees"). The consideration given was $200,000 cash and a $700,000 installment note ("$700K note"), and

Deed of Trust in which **Circle Ridge Production, Inc. _and_ Kevin Stephens** were named the beneficiaries. The interests which were the subject of the sale are called the "OBENCO" leases, which cover approximately 1100 to 1200 acres in the Waskom, Texas area in Harrison County, Texas. Shortly after Great Northern Energy acquired these properties, it purposed to include them in a package to be resold to a company called Rangeford Resources. Shortly after September 11, 2012, one of the payees, Kevin Stephens, determined to participate with his interest in the transaction in the Rangeford Resources transfer. To that end, he transferred and assigned his interest in the note and Deed of Trust to Great Northern Energy. around December 1, 2012 and before the first installment on the purchase note was due and payable. Subsequently, Circle Ridge Production, the remaining party of **"Circle Ridge Production _and_ Kevin Stephens"** attempted to collect on only the "Circle Ridge" portion of the note, and determined to foreclose. It conducted a foreclosure sale on November 5, 2013. On December 26, 2013, simultaneously with recording the Trustees Deed from the November 5, 2013 sale, it claimed it "acquired" the remaining interest in the $700K note through a purported assignment from "Kevin Stephens".

Following this muddled state of affairs, Great Northern filed suit in Dallas County, Texas, in Cause No.14-04993, against Circle Ridge Production, Kevin Stephens and Bill Briscoe, Circle Ridge Production's President, and principal

shareholder. It alleged, causes of action for slander of title, breach of contract, unjust enrichment, and breach of implied covenant of good faith in fair dealing, negligent misrepresentation, fraud, and torturous interference with contact with claims for attorney's fees. Circle Ridge Production and Bill Briscoe responded by filing a Motion to Transfer Venue to Harrison County, and separately, filed suit in Cause No. 2014-0460, alleging, that Great Northern had filed a notice of its assignment from Kevin Stephens of his rights with respect to his interest in the $700K note, and his liens and property rights with respect to the OBENCO leases. (which it alleged to be a forgery). Circle Ridge claimed that that "forged" assignment from Stephens to Great Northern clouded Circle Ridge's title. The venue in these actions was subsequently transferred to Harrison County, Texas, and the causes consolidated into Cause No.14-0460.

By the time of trial in October, 2015, Circle Ridge had filed its Fifth Amended Petition and Second Amended Answer, in which it asserted causes of action against Defendant Great Northern for possession of property (under a Trespass to Try Title) theory, removal of a cloud on title, (attributable to the note assignment, (from Stephens), breach of contract, for non-payment of the $700K note). The Fifth Amended Petition also included claims against Joe Loftis and Ronald J. Abercrombie for alleged violations of the Texas Civil Conspiracy and Violation of the Texas Theft Liability Act, and negligence. Great Northern had

expanded the claims of which it presented in its trial petition as follows: against Kevin Stephens for Breach of Contract, Unjust Enrichment, and failure to deliver purchased equipment, Breach of the Implied Covenant of Good Faith and Fair Dealing, negligent misrepresentation, fraud, and tortuous interference with contract, to remove cloud on Great Northern's title, and for wrongful foreclosure against all Defendants including Briscoe, Circle Ridge and Kevin Stephens, for attorney's fees and costs.

After midnight on October 20th and on October 21, 2015, Circle Ridge Production filed its Notice of Non-Suit in which non-suited all claims Joe Loftis and Ronald J. Abercrombie individually, including its claims of civil conspiracy and violation of the Texas Theft Liability Act.

Trial in this matter was conducted before a jury commencing October 19, 2015 after 3 ½ days of proceedings, the Court refused to allow Great Northern Energy to submit any of its issues except wrongful foreclosure to the jury, granting directed verdicts to Circle Ridge Production on all of Great Northern's other claims. The Court also ruled in favor of Circle Ridge with respect to removal of claims as cloud of title, liability of Defendant Great Northern for Breach of Contract, and for claims by third party Kevin Stephens for Breach of Contract by Great Northern Energy. The Court further found that Great Northern owed Circle Ridge Production the sum of $637,611.93 under terms of the $700K note. The only

issue submitted to the jury was with regard to Great Northern Energy's claims that Circle Ridge had wrongfully foreclosed the lien and the Deed of Trust sale on November 5, 2013. The jury found adversely to Great Northern Energy with respect to those issues submitted.

Based upon its directed verdict rulings, the Court entered Judgment for Circle Ridge Production against Great Northern Energy on Circle Ridge Productions claims against Great Northern Energy, and denied either liability or recovery against Bill Briscoe, Kevin Stephens or Circle Ridge Production with respect to all of Great Northern Energy's claims. The Court entered its Judgment on December 7, 2015. Further, on February 22, 2016, the Court overruled Great Northern's Motion for Judgment NOV and Motion for New Trial, presenting many, if not all, of the issues presented by Appellants in this appeal.

From these preceding circumstances, Great Northern Energy brings this appeal.

## REQUEST FOR ORAL ARGUMENT

Appellant Great Northern Energy, Inc., has previously filed its Notice of Appeal in the Court from the "Orders" of the said 71" District Court, Harrison County, Texas, dated March 30 & 31, 2016, which is pending herein as Cause #06-2016-15-CA, styled, Great Northern Energy, Incorporated, Appellant vs. Circle Ridge Production, Inc., Appellee.

The Court should grant oral argument for the following reasons:

a. Oral argument would give the Court a more complete understanding of the facts presented in this appeal. *See* Tex. R. App. P. 39.l (c).

b. Oral argument would significantly aid the Court in deciding this case. *See* Tex. R. App. P. 38.l (e), 39.i (d).

# ISSUES PRESENTED

From *Voir Dire*, through ruling on Defendants' Motions for New Trial and Motion for Directed Verdict, the record is filled with errors committed by the trial court. Certain rulings by the trial court arise from and relate to its refusal to allow Defendants to present factual evidence establishing the bases for their defenses, counter-claims, and third party claims. All these erroneous rulings underlie, are common to, and result in various reversible rulings by the trial court. These evidentiary errors are presented as initial issues. Further they are incorporated into the subsequent erroneous rulings of the Court in withdrawing Defendants' rights to obtain proper jury findings and rulings in this case. Specifically, subsequent erroneous filings with respect to withdrawal of issues from the jury are specified, many of which incorporate the evidentiary exclusions. From Appellants perspective, the errors are so numerous and glaring that it is impossible to submit them in conformance with the ideal Rule of Presentation of only (3) areas. For purposes of clarity, and hopefully simplicity, the errors are organized within seven eleven (11) groups or areas of wrongful conduct by the trial court; however, each issue is specified separately within the various groups. These areas are organized chronologically within the progress of the trial proceeding.

1. **Errors in Voir Dire:**

**1-1**. The Court erred in permitting counsel for 3d party Defendant

Kevin Stephens to improperly attempt to bolster his evidentiary contentions and prejudice Defendants through using his questions to venire persons to support his contentions, over Defendants' objections and to grant Defendants' Motion for Mistrial following its overruling of them.

**2. Errors in Excluding Practically All of the Testimony and Evidence offered by Defendants to support their defenses, counterclaims and third party claims;**

**Errors in excluding Kevin Stephen's testimony & exhibits:**

**2-1**. The Court erred in excluding testimony of Kevin Stephens that he "assigned and transferred" his interest in the September 11, 2012, $700,000.00 note ("$700K note) to Great Northern Energy, Incorporated in December, 2012;

**2-2**. The Court erred in refusing to allow Defendants' to introduce exhibit P-12, "the note assignment", or to allow questioning of Kevin Stephens regarding same, evidencing Kevin Stephens assignment of his interest in the $700K note to GNE in December, 2012;

**2-3**. The Court erred in refusing to permit the cross-examination of Kevin Stephens regarding the significance of the "Rojo Burro" contract,

evidencing his participation with GNE in the Rangeford Resources transaction;

2-4. The Court erred in refusing to admit the Rojo Burro contract signed by Kevin Stephens into evidence (Exhibit GN #16);

2-5. The Court erred in refusing to admit the $700K note and lien assignment dated December 1, 2012, from Kevin Stephens to Great Northern Energy, Incorporated (Exhibit GN #18);

2-6. The Court erred in excluding the testimony of Kevin Stephens regarding GNE's payments of $10,000 to Mike Stephens and $50,000 to Bobby Stephens in satisfaction of its consideration obligations established in the December 1, 1012, note assignment (Exhibit GN #18);

2-7. The Court erred in excluding the admission of GNE's exhibits GN 20 and 21), evidencing payment of $60,000.00 in December, 2012, in satisfaction of its consideration obligations in the December 1, 2012 assignment (Exhibit GN18);

2-8. The Court erred in excluding from the jury Kevin Stephens testimony that he has sold his interest in the $700K note to Bill Briscoe before February 1, 2013;

**2-9.** The Court erred in excluding testimony that Kevin Stephens had authorized Michael Stephens to act as his agent regarding collection and assignment of note matters after December 1, 2012;

**2-10.** The Court erred in excluding testimony that the $135K paid by Great Northern Energy to 15 Bar LLC was paid as consideration for the $700K note assignment to the Stephens family;

**2-11**. The Court erred in excluding GNE exhibits #16, #17 and #18 from introduction into evidence; Exhibit #16 is Rojo Burro agreement, Exhibit #17 is Rojo Burro agreement and Exhibit #18 is (Searle note transfer) Kevin Stephens Affidavit of Forgery;

**2-12.** The Court erred in excluding the testimony of Kevin Stephens, acknowledging execution of assignment interest to Great Northern as offered in Kevin Stephens Bill of Exceptions;

**2-13.** The Court erred in excluding the testimony Kevin Stephens acknowledging payments of $62,500 by Great Northern in consideration of his assignment of his interest in the note; Exhibit #19 in excluding the testimony of Kevin Stephens offered in the Bill of Exceptions acknowledging assignment document assigning his interest in the note to Great Northern;

**Errors in excluding Joe Loftis' testimony & related exhibits:**

**2-14**. The Court erred in excluding the testimony of Joe Loftis relating to payments to Kevin Stephens in consideration of his transfer of his interest into the September 11, 2012 note;

**2-15.** The Court erred in excluding the testimony of Joe Loftis concerning the terms of assignment of Kevin Stephens interest in the $700K note to Great Northern Energy, and GN#17, setting forth the terms, and GN#18 concerning the terms of the transaction between Kevin Stephens and Great Northern Energy relating to his transfer of his interest in the $700K note;

**2-16.** The Court erred in excluding the evidence regarding the payments by Great Northern to Michael Stephens and Bobby Stephens in satisfaction of its obligations under the note;

**2-17.** The Court erred in excluding the testimony of Joe Loftis regarding Great Northerns performance of its obligations under the notes. Exhibits #20 and #21;

**Errors in excluding Kayla Marrs' testimony & related exhibits:**

**2-18.** The Court erred in excluding the testimony of Kayla Marrs regarding the execution of Kevin Stephens' Exhibit GN#17 before her;

**Errors in excluding Nate Morans' testimony & related exhibits:**

**2-19.** The Court erred in excluding the testimony and exhibit offered through Nate Moran, Exhibit #D12, and Exhibit #D15 regarding payment by Great Northern Energy on the $700K note;

**2-20.** The Court erred in excluding Exhibits #GN16,#GN17, GN#18, #2, #2A, and #12 from admission as offered by Nate Moran on Plaintiffs Bill of Exceptions through Nate Moran, together with his explanation thereof;

**2-21.** The Court erred in prohibiting the witness Michael Stephens from testifying regarding the Rangeford Resources project and the role of the assignment of the note therein;

**Error in Michael Stephens's testimony exclusions: The Court erred in excluding from the jury the following items from the Bill of Exceptions of Michael Stephens:**

**2-22.** the Court erred in excluding Mr. Stephens' explanation of the transaction between Kevin Stephens and Great Northern Energy regarding his assignment of the note;

**2-23.** the Court erred in excluding the testimony of Michael Stephens in explanation with respect to their participation with Great Northern in the Rangeford Resouces transactions;

**2-24.** the Court erred in excluding the testimony of Michael Stephens regarding Michael Stephens and Kevin Stephens appearance before Kayla Marrs acknowledging Exhibit #GN17;

**2-25.** the Court erred in excluding the testimony of Michael Stephens in explanation of the terms and performance of Great Northern with respect to Exhibit #GN17;

**2-26.** the Court in excluding the testimony of Michael Stephens of the specific notification he gave to Bill Briscoe, President of Circle Ridge Productions, concerning the Stephens family's participation with Great Northern in the Rangeford Resources transaction and the assignment of Michael Stephens interest in the $700K note all in October, 2012;

**2-27.** the Court erred in excluding the testimony of Michael Stephens regarding the terms of the Rojo Burro transaction outlined in Exhibits #GN16 and **#GN18**, together with the exclusion of Exhibits #GN16, #GN17, **#GN18** and #GN20 as identified by Michael Stephens as identified and authenticated by Michael Stephens;

**2-28.** the Court erred in excluding the testimony of Michael Stephens' acknowledging Great Northerns payments of $10,000 and $50,000 to Bobby Stephens in December 2012;

**2-29.** the Court erred in excluding the testimony of Michael Stephens regarding the financial and business relationship between Kevin Stephens and Chad Hamilton;

**2-30.** the Court erred in excluding the testimony offered in the Bill of Exceptions by Michael Stephens of Kevin Stephens role in the disappearance of equipment sold to Great Northern for use on the leases;

**2-31.** the Court erred in refusing to admit Great Northern Exhibit #16, letter of agreement between Kevin and Michael Stephens and OBENCO and Rojo Burro; the Court erred in refusing to admit Great Northern Exhibit #17, letter of agreement between Kevin and Michael Stephens and Great Northern; the Court erred in refusing to admit Great Northern Exhibit #18, purchase (or) note and financial interest Kevin Stephens unto Great Northern Energy, OBENCO; the Court erred in refusing to admit Great Northern Exhibit #20($10,000 check to Michael Stephens) & #21, ($50,000 check to Bobby Stephens);

2-32. the Court erred in refusing to admit Exhibit #21A, demand letter, Defendants **Exhibit #12,** (letter dated August 2, 2013), and **Exhibit #12**, a schedule of payments to Circle Ridge.

**3. The Court erred in granting instructed verdicts and or refusing to submit the following matters to the jury:**

**3-1.** the Court order granting Circle Ridge's Motion against Great Northern for a Breach of Contract, liability on $700K note;

**3-2.** the Court erred in granting Kevin Stephens Breach of Contract claims with regard to its dismissal of Great Northerns Breach of Contract claims against Kevin Stephens;

**3-3.** the Court erred with regard to granting Kevin Stephens' motion for directed verdict against Great Northern with respect to Great Northerns cause of action of fraud against Kevin Stephens;

**3-4.** the Court erred in granting Kevin Stephens' and Bill Briscoe's instructed and directed verdict against Great Northern claims in dismissing Great Northerns claims against them for unjust enrichment;

**3-5.** the Court erred in granting Briscoe and Stephens' Motion for Instructed Verdict against Great Northern with respect to Great Northerns' claims for breach of the implied covenant of good faith and fair dealings;

**3-6.** the Court erred in so far as it granted Kevin Stephens and Bill Briscoe's for instructed or directed verdict that Great Northern take nothing from Briscoe and Stephens with respect to its claims for negligent misrepresentation;

**3-7.** the Court erred in entering a directed verdict in favor of Briscoe, Circle Ridge and Kevin Stephens with regard to Great Northerns claims for interference with contract;

**3-8.** the Court erred in directing a verdict for Circle Ridge Production with regards to its Trepass to Try Title claims;

**3-9.** the Court erred in awarding Circle Ridge Production attorney's fees against Great Northern for trial attorney's fees in the amount of $150, 873.37;

**3-10.** the Court erred in entering a directed verdict for Circle Ridge against Great Northern for liability in the sum of $637,114.15 which Circle Ridge asserted Great Northern owed it on the notes.

**4. the Court erred in failing to grant Great Northern Energy, Inc., Abercrombie and Loftis' Motion for Mistrial prior to submission of any issues to the jury.**

**5. Errors with respect to Jury Questions and Answers:**

**5-1.** the Court erred in improperly submitting the jury issues to the jury as submitted because it improperly allocated the burden of proof.

**5-2.** the Court erred in awarding bases based upon the findings of the jury that the Courts answers to questions 1 and 2 were immaterial

because the evidence proves conclusively as a matter of law, that the foreclosure sale on November 5, 2013 was improperly conducted.

**6. the Court erred in awarding damages in the amount of $637.114.15 to Circle Ridge, because there is no proper evidence upon which to award such basis.**

**7. the Court erred in allowing counsel for Circle Ridge to make the following improper jury arguments;**

**7-1.** With respect to question number 1, insofar as counsel for Circle Ridge asserts the burden of proof was on Defendant to disprove the that the foreclosure sale of November 5, 2013, was properly conducted, the burden was not upon Great Northern Energy, but rather upon Circle Ridge.

**7-2.** the Court erred in allowing counsel for Circle Ridge Production to make an improper and prejudicial argument, insofar as it allowed such counsel to read a stipulation to the jury that Great Northern owed Circle Ridge $637,114.15 under terms of the note when such representation was in fact a misrepresentation known to all parties and submitted over Great Northerns objections.

**8. the Court erred in awarding attorney's fees of $150, 873.37.**

**9. the Court erred in all respects in this trial and its denial that a new trial should be granted herein and all matters re-tried. This case should be reversed and remanded for an entire new trial, because the cumulative error of the Court was so great that that is the sole remedy can effectively address the errors in the prior trial.**

**10. the Court erred in failing to grant Great Northern Energy an instructed verdict with regard to its contentions that is has no liability with regard to the Circle Ridge Production note, as asserted by Circle Ridge Production in the trial, because there is neither now or has there ever been any proper presentation of Circle Ridge's demands insofar as there is no proper assertion of Great Northerns liability under the $700K note because Circle Ridge does not have the authority, acting alone, to enforce, or even attempt enforcement of liability on such note, nor has it ever attempted to enforce the note in accordance with the law.**

**11. Great Northern is entitled to judgment that Circle Ridge take nothing, with respect to its claims for Trespass to Try Title, because there is no sufficient legal evidence which supports such determination.**

**STATEMENT OF FACTS**

One of America's great trial lawyers, Abraham Lincoln learned to read in front of the fireplace in his log cabin. Among his early reading text was *AESOP'S Fables*. Lincoln loved recounting the stories he first read there. Among his favorites was that of the "Wolf in Sheep's Clothing", a story in which a lamb, seeking the wisdom and protection of its mother bounded up a hill to a figure apparently clad in a sheep's skin. However, upon arrival, sadly the lamb realized it encountered the wolf covered in its mother's wool. Sadly it was devoured. Unfortunately, Appellants would liken the lamb's experience to theirs in seeking justice and protection of the law in this case. Sadly, from the commencement of *voir dire* through the Court's ruling on Appellant's Post Judgment Motions, they felt deceived at every turn and ultimately devoured by their trial court experience.

From the viewpoint of Appellant, Great Northern Energy, this lawsuit is the effort of Appellees Circle Ridge Production and Kevin Stephens to avoid the consequences of the unauthorized foreclosure of a Deed of Trust lien and its attempt to enforce the liability of Appellant Great Northern Energy as first established in a promissory note in the principal sum of $700,000.00 ("$700K note") on September 11, 2012 and a deed of trust given as security therefore on that date. The payees in the note and beneficiaries in the deed of trust were "*Circle*

*Ridge Production and Kevin Stephens"*. (CR: 3:134:9-136:15) Indeed, the Deed of Trust, designating both as "Beneficiary" (Cr: 1085, RR: 3:99:1-100:25) (Ex. 8) expressly provides the "Beneficiary" "… may request the Trustee to proceed with foreclosure and other remedies." Article 3, 3.1(c) CR: 1092. [page 8 of D.T.] As specified the Uniform Commercial Code and in Texas case law ( as described in Argument and Authorities section III below) the proper enforcement of rights granted in both the $700K note and deed of trust must be enforced in the name of **both**, "Circle Ridge Production and Kevin Stephens" and neither of those parties can act alone in enforcement. However, in this case joint action never existed in connection with enforcement or foreclosure, and legally it never could have existed. Nevertheless, Circle Ridge Production attempted to and did conduct a purported foreclosure sale on November 5, 2013, (CR: 1085-1106), (RR: 3:134:9-1316:15) and asserts it right to enforce the $700K note in this lawsuit. Circle Ridge's efforts began in its Original Petition filed on June 18, 2014, (CR: 10) with its claim to own oil and gas interests in Harrison County, Texas. It further alleged that the defendant Great Northern Energy had alleged it owned rights and titles with respect to the liens, leases, and promissory note of September 11, 2012 through an "assignment and bill of sale of oil and gas leases OBENCO purportedly signed by Kevin Stephens as grantor purporting to convey all of Kevin Stephens' right title and interest to Great Northern." (CR: 11) It further claimed that such

assignment was a forgery, "thereby rendering said Assignment and Bill of Sale invalid and in no force and affect." (CR: 11, 12) Its requested relief was that the Court declare the Assignment and Bill of Sale from Stephens to Great Northern invalid and unenforceable and ordering it removed from the title of property of subject litigation and quieting title. (CR:13) Simply stated, Circle Ridge centered its claims upon the proposition that Great Northern had forged and assignment of Kevin Stephens' interest in and to $700K note from Kevin Stephens to Great Northern Energy. Throughout the discovery and pretrial process Circle Ridge Production maintained these positions, refining and expanding them through four amendments to its Original Petition, including but not limited to its 5th Amended Petition upon which it based its prosecution in this trial. (CR: 1066-1125) Commencing in its First Amended Original Petition filed January 5, 2014, (CR:97) Circle Ridge expanded its claims of forgery of the Assignment from Kevin Stephens to Great Northern and claims the principals of Great Northern Energy, Joe Loftis and R.J. Abercrombie has conspired to violate the Texas Civil Conspiracy and Texas Theft Liability Acts in securing and recording the forged Assignment and Bill of Sale from Kevin Stephens to great Northern Energy. (Cr: 101-102) These allegations continued throughout the pretrial period in successive pleadings, Plaintiff 2nd Amended Petition filed on October 10, 2014 (CR: 680, 683-685), Plaintiff's 3rd Amended Petition filed August 28, 2015 (Cr: 839, 845-847),

and in Plaintiff's 5th Amended Petition, filed October 13, 2015 (CR: 1066, 1069-1074). However, apparently realizing its inability to establish the "forgery" allegations through competent evidence in trial, (see Statement of Facts, pages 29-30 herein). Circle Ridge surreptitiously abandoned its claims of allegations of forgery shortly after midnight, on the 2nd day of testimony, to-wit: around midnight on October 20, 2015 at 12:32 a.m., (CR: 1237), in which it Non-suited all claims regarding, Non-suiting all claims against Loftis and Abercrombie, individually for violation of civil conspiracy or of the Texas Theft Liability Act, (CR: 1238) and also any other claims against Loftis or Abercrombie individually. Thus, when it came time to put up or shut up, concerning Circle Ridges allegations that the Assignment of Kevin Stephens was a forged document, Circle Ridge tucked its tail and ran from any effort to prove the veracity of those allegations through competent evidence. Further, being unable to establish that the assignment of Kevin Stephens' interest in the $700K note and deed of trust to Great Northern in December 2012 was not legitimate, (CR:1238), Circle Ridge proceeded to attempt to cover its tracks for its unauthorized acts in conducting the foreclosure sale of November 5, 2013 (Cr:1238), RR: 3:230:14-237:20) or attempting to enforce collection on the $700K note (CR: 1066,1075-1077, 1078-1079) (RR: 3:99:1-100:25), by enlisting the assistance of the trial Court. It's assistance was in excluding virtually all evidence tending to establish that neither it, nor its

designated Trustee Dean Searle, failed to act with proper authority in foreclosing on November 5, 2013 ( RR:3:145:17-146:9, 3:146:15-149:10), or filing suit to enforce collection of the note.

## SUMMARY OF THE ARGUMENT

As stated in the statement of facts, the overarching and underlying legal relationships in this cause arise through a note of September 11, 2012 and Deed of Trust contemporaneously executed to secure its payment. The designated payee and beneficiaries in both instruments are **"*Circle Ridge Production, Inc., and Kevin Stephens"*.** Because of this designation, under law, the consent of both parties, acting together, is necessary in any enforcement or collection efforts. All arguments and authorities supporting those propositions are set forth in Section II Argument and Authorities.

Because Circle Ridge had conducted a wrongful foreclosure sale, acting without the proper authority of its remaining joint tenant Kevin Stephens, or his successor in interest Great Northern Energy, Inc., Appellees initially attempted to cover their omission by claiming that as assignment of Stephens' interest in the note and Deed of Trust to Great Northern Energy was "forged". All evidence, both documentary and testimony, that Kevin Stephens had assigned his interest to Great Northern Energy **before** any foreclosure attempts or enforcement action by Circle Ridge Production occurred. Notwithstanding that mountain of evidence, the court improper allowed Kevin Stephens to testify that he gave permission to Circle Ridge Production to foreclose on Great Northern, almost 10 to 11 months **after** he

had assigned his interest away to Great Northern. That testimony was admitted and presented to the jury although Great Northern Energy was not allowed to present its rebuttal evidence. (See Section IV, Argument and Authorities). The testimony excluded was not of a single witness, but rather that of 5 witnesses, including admissions by Kevin Stephens to the effect that Great Northern had purchased Kevin Stephens' interest in the note long before any foreclosure was attempted. (See Section IV, Argument and Authorities).

The court further compounded these errors by improperly overruling Appellants counsels attempts to have the court declare a mistrial, both at the outset during *voir dire*, when counsel for Kevin Stephens attempted to illegally inject evidence into the minds of the jury pool, and at the conclusion because of the massive evidentiary exclusions.

(See Sections 6 and 7 below Argument and Authorities )

The court further compounded its errors in excluding testimony, by ruling against Great Northern Energy in numerous instances because it ruled that no evidence appeared of record to support submission of issues to the jury. However, the court had excluded that evidence which was offered on a bill. Both those procedures are improper as outlined in Section_4__ below, Argument and Authorities. The court further compounded it errors by improperly shifting the burden of proof from Circle Ridge to Great Northern regarding the wrongful

foreclosure issues insofar as they affected Appellees claims that Great Northern was trespassing against its title. And avoiding the burden of proof on Great Northern with respect to which party had responsibility to establish that the foreclosure sale of November 5, 2013 was properly authorized. The court further allow improper argument by counsel for Appellees in support of the answers to jury issues. (All is more particularly specified in <u>Section 7,</u> Argument and Authorities).

Finally, the court committed error in overruling Great Northern Energys Motion for New Trial and Motion for Judgment NOV, insofar as it granted Circle Ridges Trespass to Try Title judgment on the basis of a wholly insufficient legal basis because evidence of title and third parties was introduced into the record and negated and because Circle Ridge impleaded the parties into the cause who later filed answers, to wit: the United States Government with an Internal Revenue Service lien, without establishing a proper evidentiary basis to exclude that lien. Finally, it improperly ruled that Circle Ridge had the right to collect the $700K note proceeds from Great Northern Energy, when in fact, in law, there has never been any proper enforcement of the note.

## ARGUMENT AND AUTHORITIES

## I.
## STANDARDS OF REVIEW

Because different standards of review apply to the various issues presented as errors in this brief, each standard is separately stated within the specific areas to which it applies.

## II.

## September 11, 2012 Note and Deed of Trust

As previously described in the Statement of Facts, central events in this dispute arise from the enforcement attempts and foreclosure by Circle Ridge Production of a Promissory note in the original principal sum of $700,000.00, together with a Deed of Trust securing same, and both made to *"Circle Ridge Production, Inc. and Kevin Stephens"*, as payees in the note, (CR1107-1111) and_(RR3:98:1-98:24) and beneficiaries in the Deed of Trust. (CR1084:1106) (RR Ex.9). These designations, created a joint tenancy, and, in this case, requires that **both Circle Ridge Production, Inc., and Kevin Stephens** must act to enforce the note, §3.3110 (d), Tex. Bus. & Com. Code Ann. (2016), or authorize the trustee to foreclose the deed of trust lien indeed, the Deed of Trust itself designates *"Circle Ridge Inc., and Kevin Stephens"* as "Beneficiary".(CR 1085)(RR Ex 9, page 1.) Further, in article 3, "Defaults & Remedies", the Deed of Trust provides at

paragraph 3.2 "remedies"…"Beneficiary may…do any one or more of the following to the extent permitted by applicable law: (c)…Foreclosure…request the trustee to proceed with foreclosure. (CR 1092, Ex 9, (*Everbank v. Seedergy Ventures, Inc.,* 2016 Tex.App. LEXIS 7319 (Tex. App.—Houston [14th Dist.] 2016),  But, in this case, no such joint action occurred, nor was it ever possible at any time after January 1, 2013, because in December, 2012, Kevin Stephens assigned all of his right, title and interest in the note and liens to Great Northern Energy, (RR3:98:1-98:24); and Great Northern Energy paid the consideration of approximately $60,000.000, to Kevin Stephens' family members, (RR3:227:8-230:13), as directed by Kevin Stephens, (RR3:227:8-230:13). There is enormous significance in the impact of the word "**and**" in this designation.

Article 3 of the Uniform Commercial Code, Texas Business and Commerce Code adaption of the UCC, controls enforcement of rights arising pursuant to promissory notes and negotiable instruments. The relevant statutory provision is §3.110, "Identification of the Person to Who Instrument is Payable" Tex. Bus. & Com. Code Ann.§3.3110 (West 2015). Specifically, subsection (d) of §3.3110 provides in relevant part, "…(i)f an instrument is payable to two or more persons not alternatively, it is payable to all of them and **may be negotiated, discharged, or enforced only by all of them.**" *Id.* at §3.3110(d).  The Comment 4 attached to (and part of) this Code section discusses subsection (d) with this explanation:

"…If an instrument is payable to X and Y, neither X nor Y acting alone can be the holder of the instrument. The instrument is 'payable to an identified person.' The 'identified person' is X and Y acting jointly. Section 3-109(b) and 1-102(5)(a). Thus,…X or Y acting alone, cannot be the holder or person entitled to enforce or negotiate the instrument because either, acting alone, cannot be the holder or the person entitled to enforce, or negotiate the instrument because neither, acting alone, is the identified person stated in the instrument."

Thus, Circle Ridge, acting alone does not have the power to enforce or foreclose on the liens securing payment thereof. *See Johnson v. Cox*, 630 S.W.2d 492 (Tex.App.-Corpus Christi, 1982, *writ ref'd n.r.e.).*

Section 3.201 of the Texas UCC (Tex. Bus. & Com. Code Ann. §3.201 (West 2015), governs "Negotiation". Although the specific statutory language of that section does not squarely address the issue presented here, a statement in the "Commentary" following that section does, *see Comment 5 to §3.203, and Commentary, "No Partial Negotiation or Transfer" and "Distinction between right to enforce instrument and ownership of instrument, "Anderson, Bartlett & East's Texas Uniform Commercial Code Annotated(2007 Edition-West Publishing)i.d.* A paragraph of the Commentary section is entitled, "**Effect of attempted partial negotiation"** states:

> **"Negotiation is all or nothing. Subsection 3.203(d) and Comment 5 make it clear that the cause of action on an instrument cannot be split. An indorsement and delivery purporting to transfer less than the entire Instrument cannot be a negotiation. It may, however, be a partial Assignment as recognized in the last sentence of §3.203(d). …"**

Further, Section 3.203. "Transfer of Instrument" (Tex. Bus. & Com. Code Ann.§3.203 (West 2015), specifies in its subsection (b), "transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course.

"… Comment 5 to §3.203, provides in relevant part, "…(t)he cause of action to enforce an instrument cannot be split. Any indorsement which purports to convey to any party less than the entire amount of the instrument is not effective for negotiation. …An indorsement purporting to convey less than the entire instrument does, however, operate as a partial assignment of the cause of action….. A partial assignee of an instrument has rights only to the extent the applicable law give rights, either at law or in equity, to a partial assignee."

Among the most recent declaration of those rights which may be assigned was set forth in *Federal Financial Co. v. Delgado,* 1 S.W.3d 181, 185, where the Court stated, "a transferee of an instrument receives whatever rights his transferor has." In this case, the relevant language in the transfer instrument from Stephens to GNE states:

"IT IS HEREBY AGREED AND UNDERSTOOD, FOR AND IN CONSIDERATION OF ONE DOLLAR AND OTHER GOOD AND VALUABLE CONSIDERATION, IN HAND PAID BY THE PARTIES HERETO AND ACKNOWLEDGE BY THEM AS SUFFICIENT, that Kevin Stephens, Individually and as any or no portion of ownership in Circle Ridge Production, Inc., (hereinafter called KS) does hereby sell, transfer, bargain, let, provide possession and domain over and otherwise gives unto Great Northern Energy, Inc. (hereinafter GNE) all of KS right, title and interest in and to that certain debt instrument wherein KS is lender unto GNE under and note, and according to the herein state terms and conditions: to wit: KS does hereby, effective December 1st, 2013, sell and grant his undivided portion, whatever such portion may be, but not less than 50% of, that certain note due from GNE unto KS and Circle Ridge

Production, Inc., jointly, and that certain Deed of Trust attached thereto, and subject in and to the OBENCO leases and wells, as shown …."

…Kevin Stephens is assigning this debt in whole and as part of the original contract and debt instrument and …Kevin Stephen transfers (*sic)* his rights, in any form or manner, under those agreement…"(RR Ex GN 18,4:310-11-311:22,4:325:20-25,3:210:3-213:25)

Further, the identified beneficiaries or beneficiary of the Deed of Trust as stated on its face is *Circle Production and Kevin Stephens.* Texas is jurisdiction in which the lien follows the note. In other words, enforcement of the lien must comply with the terms of the note. There can be no greater or separate right for enforcement of the lien beyond the authority of the note it secures. (Case citation). *Campbell v. Mortgage Electric Registrations System, Inc*., 2012 Tex. App. Lexis 4030, 2012 Westlaw 1839357 *4 (Tex. App.-Austin May 18, 2012, Petition denied), *Leavings v. Mills*, 175 S.W. 3d 301, 310 (Tex. App.-Houston [1st District] 2004, no Petition).

### III.

### <u>IMPROPER VOIR DIRE</u>

During the *voir dire,* examination by Josh Manass, Kevin Stephens' attorney, over Defendants objections, (RR 2:127:1-128:1), and in overruling Defendants request for mistrial to: (RR 2:128: 2-9), the Court allowed Manass to inject wholly improper evidentiary matters into the trial, attempting to use venireman as "experts", to bolster his contentions by using *voir dire* with jurors

having specialties such as being an attorney, or having oil field experience or having psychological experience, to inject their opinions regarding the specialty matters related to their occupations, into consideration before the whole panel, all being in complete violation of the requirement for the proper presentation of expert testimony pursuant to Texas Rules of Evidence ("T.R.E."), Rules 701-706 T.R.E. Specifically, Manass attempted to use the venire person Berry to bolster his case concerning the requirements for notarization, and (RR 2:120: 12-124:12), and the venire person Williams, over Defendants objections, (RR 2:121: 22-122:14) and venire person Williams, concerning his knowledge of wells in the Waskom area and the quality of wells concerning their productive capability of wells. (RR 2:124: 13-2:126-24, and specifically: asking about the quality of wells as being "only stripper wells" (RR 2:128 17-129:24), again, over Defendants attorneys objection, Manass also conducted improper *voir dire* with venire person Williams concerning psychological tendencies of persons, aimed at discrediting Joe Loftis (RR 2:128 10-129-23). As stated, these questions were submitted with an idea to planting preconceived opinions of the Defendants as can be further seen below.

It, impacted one of the jurors who was selected and deliberated. The test for the Courts rulings on Defendants objections to *voir dire* is an abuse of discretion. *Cortez v. HCCI-SAN ANTONIO INC.,* 159 S.W. 3d, 87(Tex. 2005). An abuse of discretion occurs when a trial court allows questioning in violation of law.

(*Travler's Ins. Co. v Deaton,* 456 S.W. 2d 544, 545 of Tex. Civ. App. Amarillo 1970, writ ref'd n.r.e.); *A.J. Miller Trucking Co. v. Wood,* 474 S.W. 2d, (Tex. App. Tyler 1971, writ ref'd n.r.e).

## IV.

## EXCLUSION OF PRACTICALLY ALL OF

## APPELLANTS EVIDENCE, BOTH TESTIMONY

## AND DOCUMENTARY

As previously presented in (Section II), "September 11, 2012 Note and Deed of Trust", the proper resolution of issues in this case *revolves* around the determination of whether Plaintiff Circle Ridge can properly prosecute an action for enforcement of its right under the promissory $700K note of September 11, 2012 and foreclose the Deed of Trust lien given as security therefore when the note is made payable to ***"Circle Ridge Production, Inc. and Kevin Stephens"*** and the same parties are identically specified as "Beneficiary" in the Deed of Trust**.** (CR1085-1111)(RR3:99:1-100:25), (Ex.8)) In trial, Circle Ridge attempted to convince the jury that is could proceed in its collection and enforcement efforts, acting ***alone*** because it had been authorized to do so by Kevin Stephens in behalf of Kevin Stephens **and** Circle Ridge Production, Inc. Bill Briscoe testified Kevin Stephens gave him oral permission to foreclose in November, 2013, (RR 3:104: 17-109:24). Kevin Stephens testified that he gave

Bill Briscoe permission to foreclose on his interest in the $700K note and Deed of Trust, (RR3:200:19-202:19), Circle Ridge Production argued that fact to the Court (RR 5:14"23-18:3) (RR 3:200:19-202:19). However, the Court wholly and completely to refused to allow Defendants to offer testimony through either the cross examination of Kevin Stephens (RR3:210:3-213:25), the direct testimony of Joe Loftis (RR4:38:6-4:39:11), the direct testimony of Michael Stephens (RR4:292:17-305:11), that Kevin Stephens had assigned his interest in the promissory note, as permitted by Section 3:201, (TEX. BUS. & COM. CODE ANN.) (LEXIS NEXIS 2016 ).

However, specific testimony as set forth below was offered by Joe Loftis, of the negotiation, and execution and delivery of the note and Deed of Trust lien assignment by Kevin Stephens (RR4:38:6-4:39:11,4:141:127-151:4),  as well as the payment of the sum of $10,000 to Michael Stephens (RR4:141:17-151:4) and $50,000 Kevin Stephens father Bobby Stephens (RR4:141:17-151:4) at Kevin Stephens direction, (Michael Stephens testimony)(RR4:303:13-305:11). That testimony was supported by both Joe Loftis and Kevin Stephens, and the admission of Kevin Stephens under oath in cross examination under Defendants bill of exceptions, that he had executed contracts assigning such note and its attached liens to Circle Ridge in December 2012, (RR3:210:3-213:25). Further, Michael Stephens testified that he had personally informed Bill Briscoe,

President of Circle Ridge Production, Inc., all of the Stephens family's assignments to Great Northern,(RR4:298:20-299:1), relevant and material to the jury determination of the issues presented to it, namely: whether the foreclosure of November 5, 2013 was properly conducted. It would not be properly conducted if the trustee conducting that sale did not have proper authority to do so. As set forth in Sec. II, page 35-39, above, it is axiomatic that Circle Ridge acting alone, did not have the authority to enforce the note. (Subsection D), (Section 3.3110, Tex. Bus. & Com. Code.) (West 2015).

The court erred in its refusal to allow the testimony of Lofts, that Kevin Stephens sold and assigned his interest in the underlying note and liens to Circle Ridge as (RR4:38:6-39:11-Bill of Exceptions) (and through Exhibits 16, 17, 18, 20, and 21) the testimony of Kevin Stephens acknowledging that he signed such documents (and sold his interest) (RR3:210:3-213:25, and Exhibits 16,17,and 18) the testimony of his brother Michael Stephens that such transaction occurred, and the testimony of Kayla Marrs, impeaching Kevin Stephens insofar as he denied executing one of the contracts (Kayla Marrs being the notary before whom he appeared to acknowledge his execution) (RR3:216:9-219:5). Four separate witnesses testified that Kevin Stephens assigned his rights in and to the $700K note and its underlying liens to Great Northern Energy, yet the Court wholly excluded, blocked and prevented the jury from having any knowledge

whatsoever of such occurrence. The reason initially given by the Court for excluding such evidence was that the assignment instrument offered by Appellants, was excluded by the statute of frauds objections of Circle Ridge; however, when Defendants counsel pointed out on the morning of the 2nd day of trial, that statute of frauds did not apply because it did not apply to an assignment of mortgage, and the contract was a performed contract, nevertheless, the Court persisted in excluding Defendants attempts to offer defensive testimony as just outlined, saying that "I just don't think you can block a foreclosure by buying 1% of a note." (RR4:311:24-322:17) That comment by the Court indicates three areas of bias or prejudice and prejudgment of this case. First, it is not reflective of any of the testimony of the case, because there is no evidence that anyone bought or attempted to buy only 1% of a note to block a foreclosure. Rather, the evidence in this case (albeit offered through the Bill of Exception) conclusively establishes that the transaction to purchase Kevin Stephens interest occurred December 2012, almost a year before the foreclosure.(RR3:210:3-213:25). There was no discussion of foreclosure at the time the Defendant Great Northern Energy purchased the note. Second, the Courts application of that ruling is completely contrary to the applicable standards of both the uniform commercial code, of the express language of the Deed of Trust, and of joint tenancy rules which require the action of both parties who then own the note at the time of the

foreclosure to proceed with enforcement. Through its exclusion of evidence, the Court left the jury with the impression that Kevin Stephens owned an interest in the note and had the right to grant his consent in November 2013, when he had parted with his ownership interest in and to the note in December 2012. Finally, the Court substitutes its preference for outcome i.e. that Appellants cannot contest foreclosure actions without giving the jury the opportunity to fully weigh all relevant evidence.

Insofar as the Court refused to admit Appellants Exhibits #16 (the Rojo Burro contract wherein Kevin Stephens agrees to assign interest in and to the note and liens to Great Northern), #17 (additional Rojo Burro contract acknowledging before Kayla Marrs), #18 (note and lien assignment from Kevin Stephens to Great Northern (#GN12, exhibit Defendant #12) as offered, RR3:196:2-199:1, 3:200-19-209:18,3:220:1-223:1, GN Ex. 16 & 18, it prevented Appellants from proving their defenses, rebutting Appellees testimony regarding its authority to foreclose, and from proving their affirmative claims. (RR:4:239:5-241:8). Clearly all of this testimony is relevant and material, as the Texas Supreme Court indicated in its ruling in *Anderson v. Gilbert,* 897 S.W.2d, 783, 784-785, *per curiam,* overruling the 5th Court of Appeals in Dallas for its failure to properly evaluate claims as to whether only one of the joint tenants in a note in which …"Gilbert and Gideon" were joint payees of the note and joint

beneficiaries of the Deed of Trust *id.* at 784 had properly acted through **only** one of the joint tenants in causing a foreclosure sale to be executed and sue for a deficiency. i*d.*at 785. The Texas Supreme Court reversed the Dallas Court of Appeals for failing to evaluate whether only **one** joint tenant (in an "and" note and Deed of Trust situation) had received a proper assignment of the interest from the remaining joint tenant of their rights under the note **before** conducting the foreclosure or engaging in enforcement. *id* at 785. It ordered the Appellate Court to consider and evaluate the claims of a note payee that no proper assignment of the interest of Gideon or his widow had occurred **before** Gilbert acted alone to…cause a foreclosure sale to be executed and sue Anderson for deficiency. i.d. at 785. This analysis is precisely in point in this case. If a Court of Appeals must evaluate whether one joint tenant has properly assignment interest to a second joint tenant, **before** the second commences foreclosure or note enforcement actions, clearly the trial court must allow the admission of such evidence. Further, these facts were identified in the testimony of Nate Moran (RR:220:9-222:1), documentary evidence of the contract by Kevin Stephens to assign his interest in the note and liens, the actual assignment,(Exhibits GN 16, 17, 18, & RR 4:310:11-311:22, 4:325:225), and the testimony of Nate Moran, that he had calculated payments to Circle Ridge Productions only, in calculating the amounts due on the note (RR: 4:239:5-241:8). Thus, the only party with

whom Mr. Moran dealt in representing Great Northern, was Dean Searle, who acted in behalf of Circle Ridge Production, solely.

Similarly, the Court erred in excluding the testimony of Michael Stephens, that the Rojo Burro transaction was a part of the sale and assignment of the Kevin Stephens interest in the $700K note to Great Northern (RR:4:248:13-250:251).

The Court systematically excluded either oral testimony and/or documentary evidence offered through oral testimony, relating to any attempt by Great Northern to establish before the jury that Kevin Stephens had assigned his interest in the note and Deed of Trust of September 11, 2012, to Great Northern Energy before the foreclosure on November 5, 2013. Further, it excluded evidence that the President of Circle Ridge Production, Bill Briscoe, had notice of that assignment before he attempted any foreclosure as did his attorney, Dean Searle, who was the trustee conducting the foreclosure sale on November 5, 2013.(RR3:145:17-146:9) The Court excluded the testimony of 5 separate witnesses regarding events connected to the assignment, or collection or enforcement of the $700K note, as set forth below. No testimony or exhibits relating to the assignment from Kevin Stephens to Great Northern were admitted before the jury. The Court wholly excluded and prohibited the jury from knowledge of any such relevant and material evidence. However, all of such testimony was introduced in Bills of Exception by

Appellants. Simply stated, the Court refused to allow Appellants to introduce material and relevant evidence supporting their claims and defenses before the jury, on a systematic and intentional basis. The following specific testimony which Defendants attempted to offer through the individuals identified, was excluded and appears on a Bill as hereafter indicated:

a.      Errors in excluding Kevin Stephens' testimony and exhibits:

b.      Errors in excluding testimony and exhibits offered through Bill of Exceptions testimony of Kevin Stephens:

The Court allowed Bill Briscoe to testify that he obtained "oral" permission to foreclose his lien from Kevin Stephens, (RR 3:105: 17-109:24). He further claimed that after the foreclosure sale he purchased Kevin Stephens' interest in the note, (CRP Ex 11, assignment from Kevin Stephens to Circle Ridge Production dated December 11, 2013) (RR 3:112:10-113:24, CRP Ex 11). Bill Briscoe did acknowledge that all documents including the promissory note and Deed of Trust were made jointly payable to *Circle Production and Kevin Stephens* and that both *Circle Ridge Production and Kevin Stephens* were the *designated beneficiaries of the Deed of Trust.*(RR3:134:9-136:15).  He further acknowledged that the foreclosure demand (CRP Ex 15)(RR3:136:15-138:22), states it is only in behalf of Circle Ridge Production interest in the note, (RR 3:138:20-140:10). Briscoe further acknowledged that the demand letter of July 2013 and the October demand letter of

foreclosure (CRP Ex 14), were in behalf of Circle Ridge Production (RR 3:143:10-145:14). Briscoe further acknowledged that Kevin Stephens had told him he had participated with Great Northern in the Rangeford Resources transaction, (RR 3:145:17-146:9). However, the Court refused to allow Great Northerns attorney to cross examine Mr. Briscoe when he attempted to specifically obtain Mr. Briscoe's admission that it had prior notice before the foreclosure, (RR 3:146:15-149:10). It further excluded evidence which Appellants counsel attempted to offer that Circle Ridge Production did not own Kevin Stephens interest on November 5, 2013, when it foreclosed, (RR 3:151:22-153:6). It further refused to allow the introduction of correspondence with Nate Moran, (CRP Ex 20), establishing the amount of $171, 000 as a payoff amount on Circle Ridges portion of the note in correspondence between Dean Searle and Great Northern, a payoff sheet from Dean Searle, acting as attorney for Circle Ridge (RR 3:158:4-162:9). Notwithstanding these refusals to permit cross-examination by Great Northerns' counsel, it allowed Kevin Stephens' attorney to examine and introduce into evidence through Bill Briscoe, Bill Briscoe's claim that he had no notice that Kevin Stephens had assigned his interest in the $700K note before he received his assignment of Kevin Stephens' interest on December 13, 2013.(RR 3:146:15-149:10).

The Court allowed testimony from Kevin Stephens that he gave Bill Briscoe

permission to foreclose his interest on the $700K note and Deed of Trust (RR 3:201:8-13, 200:19-202:19). Inexplicably, it refused to allow Great Northerns attorney to cross-examine Kevin Stephens to dispute the fact that he had any ownership interest in either the note or the Deed of Trust lien at the time he sold his interest to Briscoe in December 2013.(RR3:210:3-213:25, 3:220:1-223:13)or (RR 3:200:19-201:13, 3:203 25-209:18). Instead, the Court only allowed Great Northern Energy's attorney to present its cross-examination of Kevin Stephens in a Bill of Exceptions: (RR 3:210:3-252:17 and 4:31:22). During the course of Kevin Stephens's testimony, taken during the Bill of Exceptions by Appellants attorney, Kevin Stephens testified among other facts as follows:

1. That he admitted he signed the document introduced as GN Ex 16, around December 1, 2012 (RR 3:210:3-213-:25), in which he assigned his interest in the note and Deed of Trust and Lien (GN Ex 18)(RR3:210:3-213:25, 4:310:11-311:22,325:20-25) accompanying the note to Great Northern in order to participate proposed transaction wherein the "OBENCO" package would be included in the Rangeford Resources transaction. He denied that he had signed a similar contract (GN Ex 17) Rojo Burro to Great Northern Energy contract before an independent notary, Kayla Marrs, around October 24, 2012, (RR3:215:4-216:25), and equivocating as to whether his signature appeared on the document (RR 3:216:9-219:25). Although he denied the validity or genuineness of his signature on GN 17

before Kayla Marrs, an independent notary, he did acknowledge signing the agreements which were (GN Ex 16 & 18), the original Rojo Burro contract he admitted signing and the actual assignment of all of his right title and interest, including (GN Ex 18), which is a purchase of note and financial instrument Kevin Stephens into Great Northern Energy, Inc., "OBENCO" properties. Kevin Stephens acknowledged executing that document on that date. Kevin Stephens further acknowledged that Great Northern tendered the sum of $10,000 to his brother Michael Stephens and $50,000 to his dad Bobby Stephens in satisfaction of its obligations under Ex 16 and 18 in December, 2012 (RR 3:227:8-230-13).

**B**. The Court erred in refusing to allow Joe Loftis, President of Great Northern Energy, Inc., to testify concerning Kevin Stephens assignments of his interests.

The Court erred in excluding the testimony of Joe Loftis, President of Great Northern Energy, Inc., (offered on a Bill of Exceptions) (RR:4:141:17-151:4), that Great Northern entered into a contract with Kevin Stephens and Michael Stephens for the acquisition of Kevin Stephens interests in the $700K promissory note and Deed of Trust, through (GN Ex 16, 17,) (RR4:141:17:144:11). It excluded testimony explaining Kevin Stephens' election to take $62,500 initially and $62,500 on one year after December 1, 2012, to wit: December 1, 2013 (RR 4:144:2-17.) Further, Loftis testified on the Bill of Exceptions that Kevin Stephens assigned the document to Great Northern in GN Ex 18(RR: 144:18-145:24). He

further testified that the $62,500 was paid in the form of $10,000 to Michael Stephens, $50,000 to Kevin Stephens' father, Bobby Stephens, (RR 150:15). Loftis further testified on the Bill of Exception that Bill Briscoe knew of the transactions between Great Northern and Kevin Stephens by virtue of having come to Great Northerns office to discuss those transactions (RR 4:150:19-151:5).

**C.** The Court erred in exclusion of Kayla Marrs testimonies a**s offered on the Bill of Exceptions**. Kayla Marrs, is a notary public who acknowledged GN Ex17 (RR 4:206 :22-207-15). She verified that her acknowledgement on GN Ex 17 was valid and impeached Kevin Stephens testimony that he had executed and acknowledged the same, as he did that before her and in her presence (RR 4:207:16-209:5).

**D**. The Court erred in excluding the testimony of Nathaniel Moran, as offered on his Bill of Exceptions, (RR 4:239:5-241:8) to the effect that the only party against whom Dean Searle represented he was attempting to enforce the $700K note was in behalf Circle Ridge Production, and ***not Circle Ridge Productions and Kevin Stephens,*** in the summer and fall of 2013. The Court further erred in failing to admit GN Ex 12, tendered with that testimony and Ex D12(RR:4:220:9-221:1) and Ex D15(RR:4:218:14-220:8) regarding payment by Great Northern on the $700K note. (GN Ex 15, letter of October 11 from Dean Searle, Demand, (RR4:218:14-220:8).

**Errors excluding Michael Stephens' testimony:**

E.   The Court erred in refusing to admit GN Ex 15 offered with the testimony of Michael Stephens  explaining the substance of the Great Northern transaction which included assignment of all interests in the $700K note formally owned by Kevin Stephens (RR4: 296:1-298:4). The Court erred in excluding Michael Stephens testimony that he personally delivered notice to Mr. Briscoe of the Stephens families decision to participate with Great Northern in the Rangeford Resources transaction and to assign its interest in the $700K note to Great Northern together with all liens, in the fall of 2012 (RR 4: 298:5-299:1): The court erred in excluding Michael Stephens identification of GN Ex 16 & 18 (the assignment) and explaining the terms of payment and the payment of same: for $62,500 (RR4:299 9-302:3) and expressing (RR: 4:300:14-302:12). The Court erred in excluding the testimony Michael Stephens acknowledging the receipt of the checks for $10,000 and $50,000 in December of 2012 in satisfaction of the obligations established in the Rojo Burro contracts GN Ex16, 17 & 18 (RR 4:303:13-305:11). Further, the Court erred in excluding the testimony of Michael Stephens, as offered in the Bill of Exceptions regarding the financial and business relationships between Kevin Stephens and Chad Hamilton (RR4:305:12-307:13). The Court erred in excluding the testimony offered in the Bill of Exceptions of Michael Stephens regarding Kevin Stephens role in the disappearance of equipment sold to Great Northern for

use on the leases and that is(RR:4:307:25-309:2)

**Standard of Review – Evidence Exclusion**

Each and all of the evidentiary exclusions, standards for review and

restrictions on Appellants counsel's ability to conduct cross-examination or present

their case, constitutes the greatest restrictions on the ability of parties to present

Appellants' case. Approximately 80% of the evidentiary offers by Appellants were

excluded. While certain evidentiary exclusions or rulings may not be reversible

error, clearly these were. The improper exclusion of competent and relevant

evidence to material injury of the complaining party should result in reversal. See:

*Anderson v. Gilbert*, *supra*, *Modine Mfg.Co. the North E. Ind. School District,* 503

S.W. 2d, 833(Tex.Civ.App-Beaumont 1973, writ ref'd n.r.e.). Appellants recognize

that the standard of valuation of whether or not the trial court committed reversible

error is an abuse of discretion, by the trial Court. However, the Texas Supreme

Court has said that the harmfulness of evidentiary rulings is determined by

examining the entire record to see whether a judgment was controlled by the

testimony in question. *Mancorp, Inc. v. Culpepper*, 802 S.W. 2d, 226, 230 (Tex.

1990). *Jamail v. Anchor Mort. Services, Inc*., 809 S.W. 2d 221, 223(Tex.1991),

reh'g of writ of error overruled, June 19, 1991). However, no specific test for

determining whether an improper exclusion of evidence was reasonably calculated to cause and probably did cause the rendition of an improper judgment: *McCraw v. Maris,* 828, S.W. 2d, 756, 758(Tex.1992). In fact, in response to Appellants attorney's objections regarding the exclusion of Appellants evidence, the Court acknowledged understanding Appellants attorney's objections, but responded, that he did not believe that the Appellant could "block" a foreclosure by buying 1% of the note. (RR4:316:25-317:8). Clearly, this comment indicates the Judge's bias, prejudice or pre-judgment of this case. Further, in the issues submitted to the jury the specific inquiry into question number one was "requesting whether "Great Northern Energy established a defect in the foreclosure sale of November 5, 2013." A defect would be a foreclosure sale (CR 1254) would be one that was conducted without proper authorization. However, in all of the evidence recited above in items the Court blocked Great Northerns attempts to introduce any evidence substantiating its claims that there was never any proper authority to conduct such sale in behalf of only Circle Ridge Production by Dean Searle. Instead, the evidence before the jury was that "Kevin Stephens had authorized Bill Briscoe to act for Kevin Stephens' interest in the foreclosure sale in November 2013." (RR:3:200:19-202:19). Clearly the absence of this evidence affected the jury's decisions, and the Courts entry of judgment that Great Northern had not "proved" its wrongful foreclosure allegations. This testimony was should be controlling on a

material issue dispositive in this case.

# V.

## COURT ERROR IN EITHER GRANTING INSTRUCTED VERDICTS AGAINST GNE AND/OR REFUSING TO SUBMIT THE FOLLOWING ISSUES TO THE JURY FOR DECISION.

1. Standard of review: insofar as Appellants present issues relating to the trial courts granting Plaintiffs Motions for Directed Verdict or refusing to submit Appellants issues, to the jury and granting an instructed verdict in favor of Plaintiffs, the exclusion of the evidence as argued in Section IV, pages 43-58 above, becomes relevant and important. The evaluation standard for this Court in determining the propriety of the trial court's action in granting Motions for Directed Verdict or removing matters from consideration from the jury to grant a Directed Verdict, is whether the party opposing the granting of the Directed Verdict or removal of issues from the jury has presented any evidence of probative worth, raising a material fact issue and establishing a claim or defense, while viewing such evidence in the light most favorable to, in the case Appellants. *Ojeda v. Walmart Stores*, 956 S.W. 2d 704, 706-707 (Tex. App.-San Antonio 1997, pet. denied). Further, insofar as the Appellant present issues regarding the trial Courts exclusion of oral and documentary evidence, which would establish Appellants

defenses and claims against Plaintiff Circle Ridge Production and Third Party Defendant Kevin Stephens, Appellants submit that the standard is whether the evidence excluded was calculated to and probably did cause the rendition of an improper judgment as the Supreme Court has announced is prohibited in *McCraw v. Maris,* 828, S.W. 2d, 756, 758(Tex.1992), supra, 758, and Anderson v. Gilbert, supra, at 784-85

In evaluating whether Appellants submitted sufficient evidence of probative worth, raising a material fact issue and establishing a claim or defense, the evidence described in Section IV. 43-58 above, must be viewed in the light most favorable to Appellants; however, the Court excluded that evidence, but it was before the Court through the Bills of Exception recited previously and offered by Appellants.

The prejudicial and apparently intentional nature and extent of the Courts actions in excluding the evidence recited in Section IV 43-58 above, is apparent. Simply stated, the Court refused to allow evidence in support of Appellees claims and defenses as indicated below and then rendered its judgment because contrary evidence did not appear on the record. Since these issues were never presented to the jury, it is essentially immaterial whether the unsupporting evidentiary matters were formally admitted into evidence.

The following issues are those which the Court erred in connection with the

entry of a Directed Verdict or overruling Appellants claims, to wit:

**5-1**. The Court erred in granting Circle Ridges' motion that Great Northern breached the $700K promissory note and owed the sum of $637,114.15 to Circle Ridge Production as liability on such note.

Many of the statutes and case authorities relating to this issue have been set forth above in Section II of this Argument of Authorities portion. Those arguments are incorporated into this section by reference as though set forth verbatim herein.

The central issue is determining liability on the note, is whether any liability on the note at this point can be properly enforced. Extensive testimony was offered to the effect that Bill Briscoe attempted to act alone. All demands (RR 4:222:18-223:6) were made by Searle in behalf of only the Circle Ridge portion of the note. Nate Moran testified in the Bill of Exceptions that all his negotiations with Dean Searle were conducted with Searle acting only in behalf of Circle Ridge Production (RR4:213:9-218:13). Joe Loftis, Michael Stephens testified, and even Kevin Stephens acknowledged through testimony offered in Bills of Exception that in December, 2012, Kevin Stephens interest in the note was assigned to Great Northern Energy. This lawsuit, including any actions to enforce liability on the note by Circle Ridge Production was not filed until June 18, 2014 (CR:10-45). Clearly, the assignment of Kevin Stephens's interest in and to the 700K note to Great Northern, occurred prior to June 18, 2014. As stated above, this evidence

must be viewed in the light most favorable to Appellants. As specified in *Leavings v. Mills*, supra, (310). Texas is a state were "enforcement follows the note". It is elementary that Kevin Stephens had the right to assign his interest in the note and liens to Great Northern. (§3.203(d), comment 5, Tex. Bus. And Comm. Code recognizing the effectiveness of partial assignments in note ownership. The Court completely refused to recognize or honor Great Northern's ownership interest in the note, following Kevin Stephen's assignment, or its failure to authorize Bill Briscoe, President of Circle Ridge, to proceed with enforcement of the note. Those admissions are errors by the Court. As the Texas Supreme Court stated the considerations which were necessary in evaluating whether proper authority to proceed in an, ***"x and y"*** foreclosure of deed of trust, and note enforcement, existed, it should include factual evaluation of whether only one joint tenant acting alone had received a proper assignment of rights from a successor interest owner. Here there is no evidence of a proper assignment. *Anderson v Gilbert, supra, 784-785.* If an instrument is payable to two or more persons and does not provide that it is payable to them in alternative, it can only be enforced by all payees, and all co-payees should be joined in the action. *Page Airways, Inc., v. the Associated Radio Service Co.*, 545 184, 189-190(Tex. Civ. App.-San Antonio, 1976, writ ref'd. n.r.e.) Further, the fact that the interest of Kevin Stephens was assigned, to GNE maybe be established by proving the transaction through which it acquired the

interest of Stephens, Sections 3.201(c), comment C, Tex. Bus. & Com. Code. See also *Lawson v. Finance America Private Brands*, 537 S.W.2d 483, 485(Tex. Civ. App.-El Paso, 1976, no writ). Once the transactions established however, the transferee acquires the same rights as the transferor had under the instrument (Tex. Bus. & Com .Code Section 3.201(a)). Clearly, evidence exists that Great Northern owned Kevin Stephens' interest. The Court's refusal to acknowledge this evidence much less admit it, is construed, and constitutes a reversible error, because the Court failed to consider the ocean of evidence supporting Appellants position. In fact, there is not one scintilla of evidence in the trial that indicates or evidences the fact that Briscoe acted with permission of the proper parties. Evidence of the fact that he had no evidence or basis to establish that Kevin Stephens owned any interest in the note or that he acted in his behalf. Clearly he did not act in behalf of Great Northern Energy with respect to the subsequently acquire interest in the September 11, 2012 note from Kevin Stephens. In short, the proper parties Plaintiff, have never prosecuted this note, and no liability can exist, notwithstanding the Court's attempts to enter its Directed Judgment at the conclusion of the trial, in the Final Judgment submitted.

Further, insofar as Appellees may argue that Appellants had stipulated to any amount owed under terms of the note, any and all of such stipulations are conditional, and apply only in the event that "Circle Ridge Production owns 100%

of the note and GNE does not own undivided ½ interest as assignee of Kevin Stephens. There is abundance evidence in the record to suggest the assignment of interest from Kevin Stephens to GNE, it has been excluded by the Court, and is contrary to the presumption that it should have been presented to the jury. Clearly the granting of these Directed Verdicts was an error by the Court.

**V-2.** The Court erred in granting Kevin Stephens take nothing Judgment with respect to Great Northern's Breach of Contract claims against him.

The elements of a Breach of Contract claim are as follows:

1. there is a valid, enforceable contract;

2. Plaintiff is the proper party to sue for Breach of Contract;

3. Plaintiff tendered performance of its contractual obligations;

4. the Defendant breach the contract;

5. the Defendant breach caused Plaintiff injury.

The elements of a contract are specified in the following cases:

*Foley v. Daniel*, 346, S.W.3d, 687,690(Tex. App. –El Paso 2009, no pet.)(elements 1, 3-5), M*arquis Acquisitions, Inc, v Steadfast Ins.*, 409 S.W. 3d, 808, 813-14(Tex. App. –Dallas 2013, no pet.)(elements 1, 3-5), *Zuniga v. Wooster Ladder Co.*, 119 S.W.3d, 856, 862(Tex. App.-San Antonio 2003, no pet.) (element 2), P*erry v. Breland*, 16 S. W. 3d, 182, 187, (Tex. App. –

Eastland, 2002 pet. denied)(element 2).

The testimony of Joe Loftis offered on his Bill of Exceptions9/8/2016 5:29 PM:75:4-76:22,4:39:13-46:4, and Michael Stephens, (RR4:305:12-309:2, establishes that there was a contract or agreement between Kevin Stephens and Great Northern to furnish pipe and equipment, and that some of that equipment was either neither furnished or removed, after Great Northern paid for it. (RR:4:305:12-309:2). Further, Kevin Stephens acknowledged that he had a contractual agreement to furnish pipe and supplies to Great Northern (RR:4:305:12-309:2). This evidence establishes the existence of an agreement. Further, the testimony of Joe Loftis that the equipment was removed, and (RR:4:29:6-31:22), and that of Michael Stephens that he felt entitled to remove the equipment (RR:4:39:13-46:4, establishes the basis for submission of a Breach of Contract issued. Further, the testimony as to the amount of money paid establishes the loss (RR:4:39:13-46:4). Thus, Great Northern has satisfied its requirements to present testimony sufficient to meet his burden of proof for submission of the Breach of Contract issued to the jury; however, the Court refused to present this matter to the jury, ruling that no evidence existed. Of course no evidence existed, the Court prevented the evidence from being introduced. The presumption exist that this testimony, viewed most favorably in Great Northern Energy's perspective, should have been presented. The Court erred in failing to do so and Great Northern is entitled to submit these issues to a proper trier of facts.

**V.3** Great Northern submits the Court erred in granting the motions of Bill Briscoe and Kevin Stephens for Directed Verdict against Great Northern with respect to Great Northerns claims for Breach of the Implied Covenant of Good Faith and Fair Dealing.

In determining whether a cause of action can be characterized as a Breach of Contract, a Tort or both, the Courts consider (1) the source of Defendants duty to act and (2) the nature of the remedy or damages sought by the Plaintiff. See: *Foremost Plastics Corp, USA v. Presidio Engineering Contractors, Inc*., 960 S.W. 2d, 41, 45(Tex. 1998); *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W. 2d , 493,494-95)Tex. 1991); *Exxon Corp. v. Gill*, 221 S.W.3d, 841, 848(Tex.App.-Corpus Christi 2007) reversed on other grounds,  299 S.W.3d 124,(Tex. 2009); *Crill v. Houston Ind*., 124 S.W. 3d, 742m 753(Tex.App.-Houston [1st Dist.], 2003 no pet.) In order to determine whether any individual action, constitutes a breach of contract or a breach of legal duty imposed by law, the Court must determine whether the remedy lies in an action for breach of contract, or where general damages are incurred and create an "independent injury". *DeWitt County Elec. Co-op v. Parks*, 1 S.W.3d, 96105(Tex. 1999), *Exxon Mobil Corp. v. Kinder Morgan Operating, LP,* 192 S.W. 3d, 120,126-127(Tex.App.-Houston [14th Dist.] 2006, no pet.). In ascertaining the distinction whether the remedy should lie in Tort or in contract, (1) obligations imposed by law or Tort obligations. Delaney, supra at 495 note 2; *Peco Contruction Co. v.Quahardo*, 919 S.W.2d, 736, 738 n.3.Tex. App. – San Antonio 1996, writ denied). Further, malfeasance are negligent affirmative

contract in the performance of a promise generally subjects an actor to tort liability as well as contract liability for physical harm and persons and tangible. Delaney, 809 S.W. 2d, 495, note 2; *Peco Contruction*, 19 S.W. 2d, 738, note 3. Accompanying every contract is a duty to perform with care, skill and reasonable expedience the things agreed to be done. The negligent failure to observe any of these conditions is a tort as well as a breach of contract. *Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2, 508, 510 (Tex.1947). Further, although there is no general duty of good faith and fair dealing in all contractual relationships, the duty may arise when the contract creates or governs a special relationship between the parties. See *T.F.W. Management v. Westwood Shores Property Owners Assoc.*, 79 S.W. 3d 712, 719(Tex.App.-Houston[14th Dist.] 2002 pet. denied). To impose a Tort duty on the parties to a contract, the Court must find a special relationship between them. *Farah v. Mafrige & Cornmanik*, PC, 927 S.W.2d, 663, 675(Tex.App.-Houston[1st Dist.] 1996 no writ. A special relationship will generally arise from the element of trust necessary to accomplish the goals of the contract. *Bank One v. Stewart*, 967 S.W.2d, 419, 441(Tex.App.-[Houston 14th Dist.]1998 pet denied). Certain relationships have been recognized as sufficient to create a duty of good faith and fair dealing: within the oil and gas context, the relationship of the executive-rights holder with the non-participating royalty interest owner. *Mangess v. Guerra*, 673 S.W. 180, 183 (Tex. 1984), working

interest owner and royalty owner, *Amoco Production v. First Baptist Church*, 611 S.W. 2d, 610(Tex. 1980), further, Texas Courts have recognized a duty to cooperate with every contract in which cooperation is necessary for performance, and there is an implied duty in such instance. *Case Corp. v. High Class Business Systems*, 184 S.W. 3d 760, 770(Tex.App.-Dallas 2005, pet. denied.) ,*Bank One v. Stewart*, 967 S.W. 2d, 419, 434, (Tex. App.-Houston [14th Dist.] 1998, pet. denied.) This duty requires a party to a contract not to interfere with the other parties performance under the contract. *Case Corp*, supra. Specifically, the actions of Stephens and Briscoe, interfered with Great Northerns ability to prosecute its efforts in developing the subject property as testified by Loftis, (RR:4:53:13-87:5. Briscoes' claims to purchase the interest, which he already knew were sold, are also an interference as further outlined below. Thus, and independent duty in Tort arises, and violates the Covenant of Good Faith and Fair Dealing.

## VI. Refusal to Grant Mistrial

**The Court erred in failing to grant Great Northern Energy, Incorporated, Ronald J. Abercrombie, and Joseph B. Loftis' Motion for Mistrial prior to the submission of this cause to the Jury.**

Before this cause was submitted to the jury, counsel for appellants moved the Court to grant and order a mistrial in this cause. (RR 5:11:14-21) It was the second time such a motion had been presented. At the outset of the trial, during the *voir dire* presentation of Kevin Stephens' counsel, a similar Motion had also

been presented. (RR2:128:2-9), *see, "Improper Voir Dire" Section III, pages 41-43 above, and now incorporated herein by reference).* This subsequent Motion for Mistrial was presented after the Court's evidentiary rulings had excluded over 75% of the evidence Appellants offered for their defenses and counter-claims, and over 80% of the documents they attempted to offer in support of their claims and defenses. From appellants' view, simply stated, they had been denied the opportunity to fairly present their evidence of their well plead claims and defenses because of wholly erroneous evidentiary rulings by the Court excluding that evidence, and because of the prejudicial and improper conduct of *voir dire,* and because, cumulatively, the error was so enormous it was impossible for any jury to fairly evaluate the truth and credibility of their claims and defenses. The legal authority supporting Appellants Motion for Mistrial are set forth in Section III, pages 41-43 above, and in the authorities and arguments presented in Section III__, pages 41-43 below, applicable to cumulative error, are applicable to the evaluation of whether the trial court erred in failing to grant Appellants Motion for Mistrial presented prior to jury submission.. All of such arguments and authorities are incorporated into this Section 4, and re-urged here:

### VII.- Errors Related to Jury Submission & Argument

### A. Errors with respect to Jury Questions and Answers:

**VII-1.** the Court erred in improperly submitting the jury issues to the jury as submitted because it improperly shifted the burden of proof to

Great Northern.

**VII-2.** the Court erred in awarding judgment based upon the findings of the jury that the Courts answers to questions 1 and 2 were immaterial because the evidence proves conclusively as a matter of law, that the foreclosure sale on November 5, 2013 was improperly conducted.


## B. the Court erred in allowing counsel for Circle Ridge to make the following improper jury arguments;

**VII-3.** With respect to question number 1, insofar as counsel for Circle Ridge asserts the burden of proof was on Defendant to disprove the that the foreclosure sale of November 5, 2013, was properly conducted, the burden was not upon Great Northern Energy, but rather upon Circle Ridge.

**VII-4.** the Court erred in allowing counsel for Circle Ridge Production to make an improper and prejudicial argument, insofar as it allowed such counsel to read a stipulation to the jury that Great Northern owed Circle Ridge $637,114.15 under terms of the note when such representation was in fact a misrepresentation known to all parties and submitted over Great Northerns objections.

Because the trial court's errors relating to the submission of issues and instructions to the jury, relating to arguments improperly allowed to be presented to the jury by Circle Ridge's and Third Party Defendant's counsel, and relating to the trial court's entry of judgment for Appellees based on the jury's answers to the questions submitted, are related and exemplify the "intertwined" totality of the trial court's **"errors" in this cause,** Appellant's argument and authorities with respect to points of error #VII-1-VIII-A above, are combined in this response.  The standard for review of the trial court's rulings complained of is abuse of discretion; *In re*

*Estate of Boren,* 268 S.W.3d 841, 846 (Tex.App.---Texarkana, 2008, pet. denied) (citing *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004), *Landon v. Jean-Paul Budinger, Inc.,* 724 S.W.2d 931, 939 (Tex.App.—Austin 1987, no writ) however, if a court's ruling is contrary to clearly established law, it is an abuse of discretion. *In re Estate of Boren,* 268 S.W.3d 841, 846 (Tex.App.---Texarkana, 2008, pet. denied) (citing *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004), *Landon v. Jean-Paul Budinger, Inc.,* 724 S.W.2d 931, 939 (Tex.App.—Austin 1987, no writ)

Further, even if there exists a contention that some factual evidence exists to support the trial court's ruling under attack, if such evidence is otherwise legally insufficient, a "no evidence" resolution is required. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding)..

In evaluating the trial court's approach and submission of its charge and questions to the jury, the only issues submitted to the jury were two questions, (CR1254 and 1255), which inquired whether 1) that Great Northern had "established" there was a defect in the foreclosure sale of November 5, 2013, proceedings, as conducted by Dean Searle, Trustee. (CR 1254); and the second was whether Great Northern had established that there was a grossly inadequate sales price…in the foreclosure sale…on November 5, 2013,(CR 1255). No issues were submitted

placing the burden of proof upon Circle Ridge Production, Inc. to establish the validity of the disputed foreclosure sale of November 5, 2013, through which it claimed to have derived its title.

This submission process completely miscasts the burden of proof. In a trespass to try title case, the burden is always on the Plaintiff to establish good title, is the Plaintiff's responsibility, and a plaintiff cannot prevail based on the failure of opposing parties to establish good title in the opposing party. In this case, however, although the Trial Court did not grant Circle Ridges Production's request for Directed Verdict, (RR5:14:23-18:04,5:19:19-25), implying that there were fact issues for jury evaluation, it shifted the Proof of Burden to Great Northern. *Dillon v. Hodges,* 804 F.2d 1384 (5thCir. 1984), *Texas Co. v. Lee*, 157 S.W.2d 628, 183 Tex. 167 (Tex. 1942), *Chapman v. Moser*, 532 F.2d 1358 (5th Cir. 1976) (***-better pg. ref.), *Ragsdale v. Griffin*, 380 S.W.2d 164 (Tex. Civ. App ****-1964). Here, however, over the objections of Appellants' counsel, (CR 1240-1246, RR 5:137:3-24), the Court, submitted the issues, miscasting the burden of proof upon Great Northern Energy to prove that Circle Ridge had not conducted a proper foreclosure. The burden of proof in a trespass to try title action does not shift to the defendant, it remains with the Plaintiff, in this case Circle

Ridge to establish the valid conduct of the foreclosure sale. *Hart v. Eason*, 321 S.W.2d 574, 159 Tex.375 (Tex. 1959), get more specific info) Appellants submitted a proper issue, (CR 1243), but the Court refused to submit it, relying, instead on Circle Ridge's insistence that the burden rested on Defendants. That is an improper shifting of the burden of proof, and an improper jury submission, contrary to established law; and thus, an abuse of discretion.

Additionally, the Court permitted the counsel for Circle Ridge to argue before the jury that Great Northern had stipulated that it owed $637,114.15 (RR 5:22:4-30:4 ). In fact, Appellants attorney only stipulated that such sum would be a proper calculation in the event Great Northern had not purchased Kevin Stephen's one half interest in the note (RR 5:25:4-26:22, and in the event the note was properly enforced in the name of "**Circle Ridge Production, Inc. and Great Northern Energy, Incorporated, successor in interest to Kevin Stephens**". (RR 5:22:3-30:4). Of course, the court would not permit that stipulation, as stated, to be used in jury argument, because it had excluded all evidence of such assignment of interest (see, Section II & IV above). Appellant's attorney stipulated that Defendant's counsel might argue same, subject however, to Appellants objection, which the Court overruled. (RR 5:22:13-30:14).

Thus, Circle Ridge's counsel improperly argued to the jury that Great Northern had stipulated it owed the sum of $637,114.15. That erroneous statement of evidence was prejudicial and likely caused error in the jury's deliberations. (Add cite-prejudicial argument). Further, counsel for both Circle Ridge and Kevin Stephens argued that the burden of proof was on Great Northern to establish that Dean Searle had not properly conducted the November 5, 2012, foreclosure sale. (CT 125_; RR 5:14:23-18:3, 5:28:10-29:16). Among other arguments, both counsel recited that Kevin Stephens had given Circle Ridge the authorization to foreclose, insofar as the Kevin Stephens ownership interest in the note made payable to *"**Circle Ridge Production, Inc., and Kevin Stephens"*** was concerned (RR5:14:23-18:3).

At no time, were Appellants allowed to argue before the jury that Kevin Stephens had sold, assigned, and transferred his interest in the note previous to the foreclosure sale to Great Northern, that Bill Briscoe had prior notice of that assignment, or that Dean Searle acted without the authority of anyone but Circle Ridge Production, Inc., in conducting the foreclosure sale on November 5, 2012, because he did not have authority from any other legal interest owner in the note on November 5, 2012. (see Section II, above).

Finally, counsel for Kevin Stephens argued that the value of the leasehold interest was much less than experts (whose testimony was also excluded) regarding the value of the interest foreclosed on versus the purchase consideration established at the foreclosure sale of $150,000.00 (RR 5:098:15-105:13, 108:23-1218). Here, the adverse effect of Josh Maness's improper injection of evidence into *voir dire*, through his questioning of venireman Williams becomes important because Mr. Williams was selected as a juror, and Maness had represented that he could use his prior experience as "common sense." (RR 2:124:13-126:24 and 2:128:10-129:24). Thus Maness injected an improper basis for the jury to use in evaluating the testimony in this case in deliberations. The harm is manifest.

## VIII.- Cumulative Error

**The Court erred in all respects in this trial and its denial that a new trial should be granted herein and all matters re-tried. This case should be reversed and remanded for an entire new trial, because the cumulative error of the Court was so great that that is the sole remedy can effectively address the errors in the prior trial.**

Few cases present a sufficient number and quality of errors to justify the reversal of the trial court's judgment because of cumulative errors. However, Texas courts recognize that when all the errors are considered together, in light of the whole record, an appellate court may find that the

accumulation of those errors was reasonably calculated to and probably did cause the rendition of an improper judgment, requiring a reversal of the trial court's judgment. *See, Southern Pacific Co. v. Hubbbard,* 297 S.W.2d 120, 156 Tex. 525 (Tex. 1956), *Mapco, Inc. v. Holt,* 476 S.W.2d 70 (Tex.Civ.App.—Amarillo 1971, writ ref'd. n.r.e.),, *Allen v. Reidel,* 425 S.W.2d 665 (tex.Civ.App.—Eastland 1969, no writ);

Appellants submit that the number and quality of errors committed by the trial court in this case more than satisfy the standard required for reversal for cumulative error. As recited above, by itemization, there are a minimum of 54 erroneous rulings all against appellants in allowing improper *voir dire*, in excluding virtually all of Appellants' otherwise admissible evidence in support of Appellants defenses and counterclaims, in erroneously granting Appellees requests for directed verdicts on 3 of Appellants claims, after excluding the supporting evidence offered by Appellants, in overruling Appellants motion for mistrial at the conclusion of evidence presentation, in erroneously submitting questions and a charge to the jury which wrongly shifted the burden of proof on Circle Ridge's issue of proper foreclosure sale authorization, in failing to require proper documentation and proof for awarding attorneys fees to Appellees, in overruling Appellants Motion for New Trial 54 points of

error), and in failing to grant Appellants Motion for Judgment NOV (3 issues). In the introduction to these arguments and authorities, Appellants likened their experience to the *Wolf in Sheep's Clothing* experience described in the *Aesop's Fable* story often recited by Abraham Lincoln. Appellants submit that the foregoing argument and authorities more than substantiates that analogy to this trial.

## IX.

**The Court erred in awarding Circle Ridge's attorney's fees against Great Northern in the amount of $150,873.37**

Following the conclusion of the jury portion of the trial, Appellee's attorneys submitted their claims for attorneys fees to the Court. In its "Judgment" entered on December 7, 2015, the Court awarded $150,873.37 to Plaintiff's attorneys. However, as Appellants' attorney asserted in his reply and opposition (CT 1330-1337), the Court was incorrect in awarding any attorneys fees, or, alternatively, awarding the sum of $150,873.37 for the following reasons:

IX-1. Appellant completely failed to sustain its burden of proof on any basis authorizing the award of attorneys fees.

All of the arguments by Circle Ridge in support of its Motion for Attorneys' Fees are founded and based upon the legal position that it is authorized and empowered to attempt collection and enforcement efforts because of its attempts to collect, foreclose, etc. in behalf of the interest of Circle Ridge production under the note of September 11, 2012, in the principal amount of $700,000.00.(the "$700K note"); however, as was extensively argued during the trial, any such collection attempts were, and are, wholly unauthorized and illegal.  Under §§3.201, 3.203, *et seq.,* Tex. Bus. & Com. Code (2013), any attempt to enforce or collect the note without the joinder of both parties, *i.e.,* both Circle Ridge and Great Northern (the then legal owner and holder of the rights formerly owned by Kevin Stephens) were wholly improper. *See*, Comment 5 to §3.203, and Commentary, *"No Partial Negotiation or Transfer" and "Distinction between right to enforce instrument and ownership of instrument," Anderson, Bartlett & East's Texas Uniform Commercial Code Annotated (2007 Edition-West Publishing).*  At the time the demands attached to Plaintiffs' MfAF were prepared and served, the record owners and holders of the note were Circle Ridge Production, Inc. and Great Northern Energy, Inc., and Dean Searle, acting as agent for Circle Ridge Production, was not authorized to so act for the holders thereof.  Thus his actions were completely improper, not properly submitted, nor properly

conducted, and thus cannot form the basis for the award of any attorneys'
fees herein, nor can any award be made to any attorney representing only
Circle Ridge herein because such action seeks to enforce only the interest of
Circle Ridge in the note.

**IX-2**. Similarly, any efforts to collect attorneys fees for violations of
any of the provisions of, or pursuant to the terms of the Deed of Trust dated
September 11, 2012, are improper, and must fail because Appellee has
never properly conducted or attempted any proper enforcement of the Deed
of Trust, because it has always acted alone and never jointly with the
remaining interest owner "Great Northern Energy, Incorporated, as
successor to Kevin Stephens, in the Deed of Trust in which the originally
designated Beneficiaries or "Beneficiary" were *"Circle Ridge Production,*
*Inc. and Kevin Stephens"*. Again, the arguments set forth in Section II,
pages 37-40 are incorporated into this point of error as though set forth
verbatim.

**IX-3**: Texas Civil Remedies and Procedures, Code 18.001, requires that
applications for attorney's fees must be submitted, at a minimum and based
upon a proper evidentiary affidavit, *El Apple1, Ltd. V. Olivas, 370 S.W. 3d*
*757 (Texas 2012)*. He should properly identify and segregate claims which
allowed recovery for such fees. *Stewart Title Guaranty Company v Sterling*,

822 S.W. 2d 1(Texas 1992), notwithstanding the ruling of *Tony Gullo Motors v Chapa,* 212 S.W. 3d 299 (Texas 2006), the Texas Supreme Court has still directed that applications for legal fees must focus on analysis of the factors (facts) underlying multiple claims. Block billing may not support the recovery of attorney's fees.  As the Plaintiff argues, this case involved not only trespass to try title**,** breach of contract, wrongful foreclosure, forgery, lack of sufficient acknowledgement in suit to quiet title.

1. The Affidavit of Ronan Searle in behalf of Searle and Searle is legally insufficient to support the award of attorneys' fees.  Specifically, the affidavit of Ronan Searle incorporates the "contemporaneous billing records of the firm Searle and Searle.  There is no independent Affidavit of Dean Searle, who apparently performed many of the services for which billing is attributable by virtue of the initials "DS" on many of the billing records in Appendix "A", stating that such services were reasonable and necessary.  Further, Ronan Searle, also a member of the firm performed services; however, no segregation of services performed by either Ronan or Dean Searle is specified, either in the Affidavit of Ronan Searle, or in any portion of Appendix A.(CR1330-1337).  Among insufficiencies frowned upon in establishing the basis for attorneys' fees recovery are unnecessary duplication of billing for

services by partners or associates. Here, Plaintiff specifies in its MFAF that "(a) as shown on Appendix, two separate law firms had to be hired by Plaintiff in order to take this case through trial." (CR1330-1337). The billing submitted in both Appendices "A" and "B" (CR1268, 1278-1301), is so insufficient that it is impossible to determine what duplication occurred.  Courts do not and should not award attorneys" fees for hours spent in duplicative activity or spent in a passive role of an observer while other attorneys perform, and are generally not recoverable. Chaves, Douglas E., "Attorney's Fees Update, 36th State Bar of Tex. Prof. Dev. Program, 36th Annual Advanced Civil Trial Course Chap. 26, p 9 (2013 ). Neither can any such segregation be made based on the Affidavit of Michael Runyan submitted.  Neither is there any evidence that any "billing judgment" has been exercised in this case, which omission is also a serious flaw in applications for payment of attorneys' fees.

2.  The time records submitted in Appendices A & B (CR1278-1301) are further insufficient insofar as they fail to specify which issues or claims apply to any distinct issues.  Issues relating to Plaintiffs "forgery" claims were never submitted, and further, Plaintiff nonsuited its claims relating

to recovery for alleged violations by the individual Defendants Loftis and Abercrombie for Plaintiff's originally plead claims of "negligence," "civil conspiracy" and violation of the "Texas Civil Theft Liability Act"- thus legally abandoning such claims against all Defendants. Nevertheless, Plaintiff's claims for recovery of attorneys' fees and costs clearly include claims for service time and costs attributable to "forgery" issues-specifically, as marked on Exhibit "4" to this Response (see page 4, "telephone conference with handwriting expert", (CR1281),p.5, "preparing documentation to expert"(CR1282), p,.7, $900 paid to handwriting expert,(CR1299). Clearly there is no recovery for such claims, and in fact, no proper basis for any recovery exists because of the violations of the requirements of §§3.201 and 3.203, Tex.Bus.& Com. Code (2013), as specified above in Response #1. Again, any claims of admission of liability with respect to any performance, either payment of sums due or any other obligation contained in the Deed of Trust, are expressly denied by all Defendants, as any admission of any liability whatsoever, is specifically conditioned on the language contained in the stipulation "in the event Defendant Great Northern Energy in did not own the interests of Kevin Stephens in the $700K note." Any such stipulation

is conditional only.  In this connection, *see, Steward Title Guaranty Co. V. Sterling,* 822 S.W.2d 1 (Texas 1992), Chaves, *supra, at p.7.*

## X.

**The Court erred in failing to grant Great Northern Energy's Motion for Judgment NOV with regard to its contentions that is has no liability with regard to the Circle Ridge Production note, as asserted by Circle Ridge Production in the trial, because there is neither now or has there ever been any proper presentation of Circle Ridge's demands insofar as there is no proper assertion of Great Northerns liability under the $700K note because Circle Ridge does not have the authority, acting alone, to enforce, or even attempt enforcement of liability on such note, nor has it ever attempted to enforce the note in accordance with the law, or in awarding any claim that Great Northern Energy pay any attorneys fees for the collection activities related to Circle Ridge Production's collection efforts in such connection.**

Appellants re-urge the argument and authorities set forth in pages 37-41 Section II above relating to the improper efforts to foreclose the Deed of Trust lien, or to enforce collection of the September 11, 2012, $700K note, without proper participation by both parties, and in the name of both parties jointly. In this case, the Court should disregard all the jury findings and sign a judgment in favor of Great Northern Energy, Inc. because no evidence was introduced by Circle Ridge to establish that the proper party authorized, noticed, or conducted the foreclosure sale in controversy on November 5, 2013.  In fact, the only evidence that both *"X and Y"* participated in or noticed or conducted the foreclosure was the testimony of Bill Briscoe, President of Circle Ridge

Production, that he got Kevin Stephen's permission to foreclose before he initiated the foreclosure proceedings in Circle Ridge's name. However, that testimony, even as taken to be wholly true and accurate in inadequate to meet the burden of proof demanded of Circle Ridge. Specifically that testimony is contradicted by Stephen's admission against interest (offered in the Bill of Exceptions) that he had sold his interest in the $700K note to Great Northern Energy before January 1, 2013, and this foreclosure did not occur until November 5, 2013. Further, the relevant foreclosure or note collection procedures were not commenced by Circle Ridge until after February 1, 2013. Thus, Kevin Stephens did not have any authority to "authorize" any foreclosure proceedings or to transfer any interest in and to the $700K note or Deed of Trust lien after December, 2012. Clearly, no proper entity ever authorized Circle Ridge to proceed with any foreclosure or collection procedures of any kind or character. Because there is no evidence that any foreclosure was properly conducted, Great Northern is entitled to judgment as a matter of law

## XI.

### Great Northern is entitled to judgment that Circle Ridge take nothing, with respect to its claims for Trespass to Try Title, because there is no sufficient legal evidence which supports such determination.

An action in trespass to try title is a suit to recover the possession of land

unlawfully withheld from an owner who has a right to immediate possession *Standard Oil Co. of Tex. V Marshall, 265 F.2d 46,50 (5ᵗʰ Cir. 1959) cert denied 361 U.S. 915, 80 S. Ct. 259, 4 L.Ed.2d 185.* It embraces all character of litigation affecting title to real estate. *Standolind Oil & Gas Co. v State, 136 Tex. 5, 133 S.W. 2d 767, 770 (1939).* The action is purely statutory Tx. Prop. Code, 22.001-22.022 and is governed by the Texas Rules of Civil Procedure [T.R.C.P. 783-809].

To bring an action in trespass to try title, Circle Ridge Production is required to file a formal petition in accordance with the Texas Rules of Civil Procedure [T.R.C.P. 783-809]. The petition must state: the real names of the parties and their residences, if known; (2) a legally sufficient description of the premises; (3) the interest which the plaintiff claims in the premises; (4) that the plaintiff was in possession of the premises or entitled to such possession; (5) that the defendant unlawfully entered upon and dispossessed the plaintiff of the premises and withholds possession; (6) facts showing rents, profits, or damages if claimed; and (7) a prayer for the relief sought T.R.C.P. 783; see *Marshall v Garcia, 514 S.W.2d 513, 518-519 (Civ. App.—Corpus Christi 1974, ref. n.r.e.)*

The petition must state the nature and extent of the interest which the plaintiff claims in the premises, such as fee simple or other estate. If an undivided interest is claimed, the petition must state the nature and amount of that interest T.R.C.P. 783. The purpose of this rule is to put the defendant on notice of how

much of the land or of the title to the land was in issue *Hicks v Southwestern Settlement & Devlop. Corp., 188 S.W. 2d 915, 929 (Tex. App. –Beaumont 1945, ref, w.o.m.)*

Since the plaintiff must recover out of the strength of his or her own title and not on the weakness of the title of the adversary party, the burden of proof remains on the plaintiff throughout the action *Fritsche v Niechoy, 197 S.W. 1017, 1018-1019 (Civ. App.—Galveston 1917, dis.);* see *Dames v Strong, 659 S.W.2d 127, 129 (Tex. App.—Houston[14th Dist.] 1983, no writ)* – burden on plaintiff to prove prima facie right of title and possession]. When the plaintiff's title is controverted, the burden of proof is on the plaintiff to establish a superior title by an affirmative showing, regardless of whether the claim of title rests in law or in equity see *Doria v Suchowolski, 531, S.W. 2d 360, 362 (Civ. App.—San Antonio 1975 ref. n.r.e.).* The plaintiff's case must be proven by a preponderance of the evidence see *D.T. Carroll Corp. v Carroll, 256 S.W. 2d 429, 432 (Civ. App.—San Antonio 1953 ref. n.r.e.),* and if the plaintiff fails to satisfy the burden of proof of superior title, the defendant is entitled to judgment without proving any right of title or possession see *Heil v Wirth, 161 Tex. 609, 343 S.W. 2d 226, 226-230 (1961).*

Circle Ridge Production wholly failed to satisfy its burden of proof in this connection. First, in its petition, it has cited additional parties owning interests (an admission against interest. (CR1066-1126). Further, it introduced into evidence

itself, Circle Ridge claimed and attempts to claim through the judgment entered herein ownership of 100% of the working interest in and to the OBENCO Leases (CT:1068,1069,1497-1508). However, Circle Ridge itself introduced evidence of outstanding ownership in third parties, to-wit: Wayne Johnson, WJ South Waskom (RR:4:104:4-105:7), (Plaintiffs' Exhibit 13). Further, it is clear that this assignment, effective from its date of assignment by Great Northern, pre-dates the date of the granting of the Deed of Trust and it is not foreclosed by any apparent foreclosure of the Deed of Trust and is contrary to Circle Ridges claims of 100% ownership. And therefore is not foreclosed under the Deed of Trust. (RR:3:210:3-213:25). Thus, the lien interest of the United States, as evidenced by pleading of the United States, (CR:1649) and the identification of these lien hold interests by Circle Ridge in its Fifth Amended Petition prevent Circle Ridge from owning title. Further, there was no evidence introduced by Circle Ridge in trial to evidence the fact that it had properly excluded any Internal Revenue Service tax liens upon the property as required by 26 U.S.C.§7425(b)(1)(c)(1)(Internal Revenue Code). Simply stated, the record is filled with claims of title besides that of Circle Ridge, pursuant to Circle Ridge's own proof. As stated, the Plaintiff in an action in trespass to try title must recover, if at all, on strength of his or her own title and may not rely on the weakness of the defendant's title see *Reinhardt v North, 507 S.W. 2d 589,591, (Civ. App. –Waco 1974, ref. n.r.e). Gray v Joyce, 485 S.W. 2d*

*311, 313 (Civ. App. –Tyler 1972, ref. n.r.e.).*

In its Trespass to Try Title action, Circle Ridge Production sought confirmation of its ownership, and rights to possession of an undivided 100% leasehold or working interest in and to the OBENCO leases. Insofar as Circle Ridge claims entitlement to a judgment of ownership of one hundred percent of the working interest in and to the OBENCO leases, (described in Exhibit "A: attached thereto) it failed to establish its claims "against all of the world" in the lawsuit. In fact, it plead there were outstanding liens in favor of Topcat Well Service and the Internal Revenue Service,(CR 1068, 1069-1072). Further, it itemized outstanding working interest ownership of forty-two percent (42%) in WJ South Waskom,(CR 1070-71, and RR:4:104:4-105:7, CRP Ex. 13), and introduced evidence of that outstanding interest; however, it never introduced any evidence of resolution of that claim lien as required by 26 USC, Section 7425(b)(1) and (c)(1). In the event Circle Ridge attempts to claim that it can rely on the so-called Abstract of Title which it filed only one week before trial, that document is not timely filed. Additionally, Defendants did not demand that Plaintiff Circle Ridge file any abstract pursuant to Rule 791, *et seq.*, Texas Rules of Civil Procedure. Clearly, as a matter of law, Plaintiff has failed to meet the required burden of proof to establish its title against all other claims. Therefore, Circle Ridge Production failed to establish its claims to the extent that it is entitled to a

judgement granting it an undivided one hundred percent title to the working interest in and to the OBENCO leases, even assuming *arguendo¸* that it established that its foreclosure sale on November 5, 2013 was legal. Of course, as set forth in paragraphs 2-19, that sale was not legal. Further, neither the Abstract, nor any instrument designated within it were introduced into evidence.

## PRAYER

Appellants pray that the court reverse the trial court and render judgment in favor of Appellants that Appellant Great Northern Energy take nothing by virtue of its claims with respect to any liability on the part of Appellees with respect to any sums allegedly owed under the September 11, 2012 note, that its claims of title under its Trespass to Try Title action be set aside and denied in all things, and that it reverse the trial court's rulings insofar as it denied Great Northern Energy the opportunity for a new trial with regard to Great Northern Energy's claims of wrongful foreclosure, interference with contractual relations and breach of the Covenant of Good Faith and Fair Dealing and Breach of Contractual obligations with respect to the equipment sales from Kevin Stephens to Great Northern Energy, and that it reverse the Courts award of attorney's fees in favor of Circle Ridge Production as against Great Northern Energy.

Alternatively, Great Northern Energy request that all matters tried before the trial court be reversed and set aside, and that a new trial be ordered on all matters pled in Circle Ridge Productions 5th Amended Original Petition and Great Northern Energy's 3rd Amended Original Answer and Counter-Claims.

Respectfully submitted,
/s/William J. Gardner
William J. Gardner

William J. Gardner, PC
PO Box 1746
422 B N Green Street
Longview, Texas 75606-1746
Tel. No. 903-236-7900
Fax No. 903-236-3367
Email: wjg@wjg-law.com

<u>CERTIFICATE   OF SERVICE</u>

I certify that on September 8, 2016, I served a copy of Appellants Brief of Great Northern  Energy, Incorporated on the parties listed below by electronic service  and  that  the electronic transmission was reported  as complete. My e-mail address is wjg@wjg-law.com.

*/s/* William J. Gardner
William J. Gardner,
PC PO Box  1746
422 B N Green  Street
Longview,Texas 75606
Tel. No.  903-236- 7900
Fax No.  903-236-3367
wjg@wjg-law.com


Honorable J. Brad  Morin,  Respondent
Judge of the 7pt District  Court of Harrison  County, Texas
Harrison County Courthouse, 200 W. Houston Street, Room
219 Marshall,  Texas  75670
Tel #  903-935-8407
Fax #  903-935-9963
leslie(a)co .harrison.tx. us


CIRCLE RIDGE PRODUCTION, INC., Plaintiff, by serving its attorney: Dean  Searle
Ronan  Searle
SEARLE & SEARLE  PC
305 W. Rusk Street, Suite I
01 Marshall,  Texas  75670
Tel. #:903-935-9772
Fax #  903-935-9790
Dean.searle@gmail.com

Michael T. Runyan
305 W. Rusk Street
Marshall, Texas
75670
Tel.#:903-935-7700
Fax #:903-935-9790
Michael(a)runyanlaw.com

**KEVIN STEPHENS, Third Party Defendant**

**Hallsville, Texas**

kstephens@.signalwellservice.com

Brendan Roth
400 S. Alamo, Site I
Marshall, Tx 75670
Tel.#903-472-4278
Fax# 888-482-9512
br@brendancroth.com

/s/William J. Gardner
William J. Gardner

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word 2013 and contains Fourteen thousand, eight hundred seventy-nine  words, (14,879) as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

/s/ William J. Gardner
**WILLIAM J.GARDNER**
**Texas Bar No. 07661000**
**422 N. Green St.; P.O. Box 1746**
**Longview, Texas 75606-1746**